Robert F. Walsh
Michael E. DiFebbo
WHITE AND WILLIAMS LLP
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA  19103-7395
215-864-7000

     and

457 Haddonfield Road - Suite 400
Cherry Hill, NJ 08002-2220
(856) 317-3600
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| COLONY INSURANCE COMPANY, | : | |
| | : | Hon. Noel L. Hillman |
| Plaintiff | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:12-CV-00722 |
| | : | |
| KWASNIK, KANOWITZ & ASSOCIATES, | : | **MOTION DATE:  OCTOBER 21, 2013** |
| P.C., et al, | : | |
| | : | |
| Defendants. | : | |

## DECLARATION OF ROBERT F. WALSH
## IN SUPPORT OF PLAINTIFF COLONY INSURANCE
## COMPANY'S MOTION FOR SUMMARY
## JUDGMENT/MOTION TO ENTER DEFAULT JUDGMENT

ROBERT F. WALSH declares as follows:

1.      I am an attorney-at-law of the State of New Jersey and a member of the bar of this

Court.  I represent Plaintiff Colony Insurance Company ("Colony") in this action.  I submit this

Declaration in support of Colony's Motion for Summary Judgment against the professional

corporation defendant, Kwasnik Kanowitz & Associates, P.C. and for entry of a default

judgment against defendant Michael Kwasnik.

2.      Attached as Exhibit "A" hereto is a true and correct copy of Colony's Complaint filed in this action.

3.      Attached as Exhibit "B" hereto is a true and correct copy of Lawyers Professional Liability Policy No EO406308, which was issued by Colony to Kwasnik, Kanowitz & Associates, P.C. ("KKA") for the period April 8, 2011 to April 8, 2012 (the "Policy").

4.      Attached as Exhibit "C" hereto is a true and correct copy of the "LAW FIRM ERRORS & OMISSIONS APPLICATION" submitted by KKA.

5.      Attached as Exhibit "D" hereto is a true and correct copy of supplemental application materials submitted by KKA to Colony.

6.      Attached as Exhibit "E" hereto is a true and correct copy of cancellation notices issued by Colony, cancelling the Policy effective December 27, 2011.

7.      Attached as Exhibit "F" hereto is a true and correct copy of a complaint filed by Katherine W. Labricciosa against Michael Kwasnik ("Kwasnik") and Kwasnik, Rodio, Kanowitz & Buckley (the "Predecessor Firm") in the Superior Court of New Jersey, Camden County.

8.       Attached as Exhibit "G" hereto is a true and correct copy of the complaint filed by Kwasnik and the Predecessor Firm in *Kwasnik v. ProAssurance Casualty Company*, Superior Court of New Jersey, Law Division, Camden County, No. L-1201-11.

9.      Attached as Exhibit "H" hereto is a true and correct copy of a complaint filed by Frederick and Beverly DeMeo against Kwasnik and the Predecessor Firm in *DeMeo v. Kwasnik*, Superior Court of New Jersey, Law Division, Ocean County,  Civil Action No. L-994-10.

10.     Attached as Exhibit "I" hereto is a true and correct copy of a complaint filed by Vera Selliken against Kwasnik, Kanowitz, the Predecessor Firm, and other defendants entitled

-2-

*Vera Selliken, et al. v. Michael Kwasnik,* Superior Court of New Jersey, Chancery Division, Atlantic County, No. ATL-C-79-10.

11.     Attached as Exhibit "J" hereto is a true and correct copy of a third-party complaint against Kwasnik and KKA in *Federal Trade Commission v. Hope Now Modifications, LLC*, Civil Action No. 09-1204 (U.S.D.C. D. N.J.).

12.     Attached as Exhibit "K" hereto are true and correct copies of correspondence between Michael Kwasnik and attorneys representing Clifford E. Frater.

13.     Attached as Exhibit "L" hereto is a true and correct copy of a complaint filed against Kwasnik by the Supreme Court of New Jersey Office of Attorney Ethics.

14.     Attached as Exhibit "M" hereto is a true and correct copy of a First Amended Complaint filed against Kwasnik by the Supreme Court of New Jersey Office of Attorney Ethics.

15.     Attached as Exhibit "N" hereto is a true and correct copy of a Kwasnik's answers to Colony's interrogatories in this action, as well as a copy of the interrogatories themselves.

16.     Attached as Exhibit "O" hereto is a true and correct copy of excerpts from the deposition of Howard Kanowitz taken in this action on November 29, 2012.

17.     Attached as Exhibit "P" hereto is a true and correct copy of excerpts from the deposition of Robert Keltos taken in this action on November 26, 2012.

18.     Attached as Exhibit "Q" hereto is a true and correct copy of excerpts from the deposition of William Kwasnik, taken in this action on February 6, 2013.

19.     Attached as Exhibit "R" hereto is a true and correct copy of a criminal indictment against Michael Kwasnik handed down on November 4, 2011.

20.     Attached as Exhibit "S" hereto is a true and correct copy of a first amended complaint filed by Paul T. Dow, Attorney General of the New Jersey, against Kwasnik on

October 27, 2011, Superior Court of New Jersey, Chancery Division, Essex County, No. ESC-C-59-11.

21.     Attached as Exhibit "T" hereto is a true and correct copy of an adversary complaint filed by Richard W. Barry against Kwasnik and others in *In re: Liberty State Benefits of Delaware, Inc.*, United States Bankruptcy Court for the District of Delaware, No. 11-12404.

22.     Attached as Exhibit "U" hereto is a true and correct copy of a complaint against Kwasnik and others in *Combs v. Kwasnik*, Superior Court of New Jersey, Chancery Division, Camden County, No. C-91-11.

23.     Attached as Exhibit "V" hereto is a true and correct copy of a complaint against Kwasnik and others in *Emdur v. Kwasnik*, Superior Court of New Jersey, Law Division, Camden County, No. C-164-11.

24.     Attached as Exhibit "W" hereto is a true and correct copy of a complaint against Kwasnik and others in *Petrillo v. Kwasnik*, Superior Court of New Jersey, Law Division, Camden County, No. L-6157-11.

25.     Attached as Exhibit "X" hereto is a true and correct copy of a petition dated November 17, 2011 by the Office of Attorney Ethics for temporary suspension from the practice of law of Michael William Kwasnik, Esq.

26.     Attached as Exhibit "Y" hereto is a true and correct copy of documents evidencing the suspension of Kwasnik's license to practice law in Pennsylvania and New Jersey.

27.     Attached as Exhibit "Z" hereto is a true and correct copy of a complaint filed by Clifford Frater against Kwasnik.

28.     I am providing the following information about the fees and costs incurred by Colony in this action in connection with Colony's application for an award of attorney's fees and

costs pursuant to the New Jersey Insurance Fraud Prevention Act.  The law firm of White and Williams was retained by Colony to represent it in this matter in December 2011, shortly after the Colony policy was canceled due to the defendants' misrepresentations, among other reasons. Since the outset, the case has been staffed almost exclusively by me, a partner of the firm billing at a rate of $260 for this matter, and senior associate Michael DiFebbo billing at a rate of $215 for this matter.  From time to time other attorneys and paralegals have assisted on the file to a limited degree, but they have all billed at a lower rate than Mr. DiFebbo.

29.     Because of the nature of the claims asserted by Colony in this case, which involves misrepresentations of material fact about the claims history and disciplinary actions against defendant Michael Kwasnik ("Kwasnik") and the firm of Kwasnik, Kanowitz & Associates ("KKA"), it was necessary to perform an extensive amount of background investigation and analysis of all of the relevant information concerning the malpractice claims, ethical claims, bankruptcy claims and criminal prosecutions against defendant Kwasnik and KKA in the years preceding and subsequent to the submission of the application for the Colony policy at issue.  In addition, Colony's ability to efficiently litigate this case and bring it to a timely conclusion was hampered by Kwasnik's failure to cooperate in discovery.  This required, among other things, frequent correspondence with Kwasnik and the Court concerning his refusal to participate in discovery. Eventually, Colony was forced to file a motion to compel Kwasnik's deposition and, when he disobeyed the Court's Order directing him to appear for deposition, Colony filed a motion to strike his answer and enter a default against him.

30.     Colony also pursued written discovery and depositions of the other two defendants originally named in this action, Howard Kanowitz and Robert Keltos, with whom Colony has now settled.  Colony is seeking the fees and costs incurred in taking discovery of

Messrs. Kanowitz and Keltos because they worked with Kwasnik and they had knowledge of the prior malpractice claims and the existence of the ethics complaints against Kwasnik.  Thus, the discovery directed to Messrs. Kanowitz and Keltos was a necessary part of Colony's claims against Kwasnik and KKA and would have been taken regardless of whether they were named as defendants in the action.  Colony, however, is <u>not</u> seeking to recover its fees or costs associated with negotiating its settlements with Messrs. Kanowitz and Keltos or the motions it has filed to voluntarily dismiss its claims against them pursuant to the settlement agreements.

      31.     With the background set forth above, the following is a summary of the activities engaged in by White and Williams on behalf of Colony in this litigation, the number of hours billed for each category of activities and the associated fees and costs.  The summary is presented in the same general order as the ABA's "Litigation Code Set" for litigation activity.

| Description of Activity | Number of Hours | Fees |
|---|---|---|
| **Investigation and Analysis** – Over the course of the two years the case has been pending, we have engaged in extensive background investigation and analysis of information relating to the prior malpractice claims and ethical complaints against Kwasnik and the professional corporation, and other proceedings involving those defendants, including the criminal prosecution of Kwasnik.  This included the investigation and review of court files in New Jersey and Delaware bankruptcy court, the files of the Office of Attorney Ethics, and communications with attorneys involved in actions involving Kwasnik and the firm.  This category also includes legal research concerning the causes of action and possible defenses to be asserted by those defendants, the review and analysis of the various documents produced and multiple status reports and recommendations to Colony. | 309.6 | $        76,220.00 |
| **Pleadings** – This category of activity includes the research for and the drafting of Colony's complaint, the review and analysis of the answers, cross-claims and third party complaints submitted by defendants, and the | 50.6 | $        11,396.00 |

| Description of Activity | Number of Hours | Fees |
|---|---|---|
| drafting of an answer to the counterclaim. | | |
| **Court Conferences** | 7.7 | $        1,655.00 |
| **Motions** – This category of activity involves the research and drafting of motion papers (including reply briefs) for the following motions: (1) a motion to dismiss Kwasnik and KKA's counterclaims and to strike Kwasnik's cross-claims and third party claims; (2) a motion to compel the deposition of Kwasnik, (3) a motion to strike Kwasnik's answer after he failed to comply with the Court order directing him to appear for deposition; and (4) Colony has drafted and is hereby submitting an extensively detailed and supported summary judgment motion and motion to enter default judgment.  The hours and fees include legal research, drafting, consultation with Colony's in-house counsel and an underwriting witness and preparation of the motion papers. | 262.9<br><br>(10 hours were incurred for Colony's Motion to Strike Kwasnik's Answer) | $      63,012.00<br><br>($2,360 was incurred for Colony's Motion to Strike Kwasnik's Answer) |
| **Written Discovery** – This category of activity involves (1) preparation of Rule 26 disclosures, (2) the drafting of interrogatories, document production requests and requests for admissions to each defendant, (3) the review of the discovery responses of the defendants and the documents they produced, (4) the drafting of document subpoenas to non-party insurance brokers, (5) the drafting of responses to the interrogatories served by defendant Kanowitz, and (6) the production of over 3300 pages of documents to defendants relating to the Colony policy and the underlying claims. | 71.6 | $      16,835.00 |
| **Depositions** – Colony deposed defendants Kanowitz and Keltos and non-party witness, William Kwasnik, an insurance broker involved in the submission of the application.  The time incurred includes extensive preparation and further review of documents associated with the history of the law firm and its prior malpractice claims and ethical issues.  The time also includes substantial preparation for the aborted deposition of Kwasnik and reports to Colony regarding the depositions and efforts to depose Kwasnik. | 68.5 | $      17,445.00 |
| **Expenses** – Deposition transcript fees | 0 | $        2,990.00 |

| Description of Activity | Number of Hours | Fees |
|---|---|---|
| SUBTOTAL | | $       189,553.00 |
| MISCELLANEOUS DEDUCTIONS/ADJUSTMENTS TO FEES<br><br>OFFSET FOR REFUND OF BALANCE OF POLICY PREMIUM DUE TO RESCISSION OF POLICY | | $       (12,512.00)<br><br>$        (8,129.00) |
| TOTAL | | $       168,912.00 |

Under 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements

are true and correct.

Dated: September 27, 2013                    /s/ Robert F. Walsh_____
                                             ROBERT F. WALSH

# EXHIBIT A

to Declaration of Robert F. Walsh in Support of Colony Insurance Company's Motion for Summary Judgment/Motion to Enter Default Judgment

Robert F. Walsh
Michael E. DiFebbo
WHITE AND WILLIAMS LLP
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA  19103-7395
Phone: 215-864-7000

    and

457 Haddonfield Road - Suite 400
Cherry Hill, NJ 08002-2220
(856) 317-3600
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| COLONY INSURANCE COMPANY | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | |
| v. | : | |
| | : | |
| KWASNIK, KANOWITZ & ASSOCIATES, P.C. | : | HON**.** |
| (IN ITS OWN RIGHT AND AS ALLEGED | : | |
| SUCCESSOR TO KWASNIK, RODIO, | : | |
| KANOWITZ, & BUCKLEY, P.C.) | : | |
| | : | **COMPLAINT** |
| and | : | |
| | : | |
| MICHAEL WILLIAM KWASNIK | : | **(JURY TRIAL DEMANDED)** |
| | : | |
| and | : | |
| | : | |
| HOWARD Z. KANOWITZ | : | |
| | : | |
| and | : | |
| | : | |
| ROBERT J. KELTOS | : | |
| | : | |
| Defendants | : | |
| | : | |

Colony Insurance Company ("Plaintiff" or "Colony"), by and through its undersigned

attorneys, by way of complaint against Kwasnik, Kanowitz & Associates, P.C. ("KKA"),

Michael Kwasnik ("Kwasnik"), Howard Z. Kanowitz ("Kanowitz"), and Robert J. Keltos

("Keltos") (collectively, "Defendants"), asserts as follows:

1.     Pursuant to Local Rule 10.1(a), the street and post office address of each named

party to this case is as follows:

     a.     COLONY INSURANCE COMPANY
               8720 Stony Point Parkway, Suite 300
               Richmond, VA 23235

     b.     KWASNIK, KANOWITZ & ASSOCIATES, P.C. (in its own right and as
               alleged successor to Kwasnik, Rodio, Kanowitz, & Buckley, P.C.)
               2050 Springdale Road, Suite 200
               Cherry Hill, NJ 08003

     c.     MICHAEL WILLIAM KWASNIK
               623 Kater Street
               Philadelphia, PA 19147

               Upon information and belief, Kwasnik is currently incarcerated and
               awaiting trial at the Camden County Correctional Facility, 330 Federal
               Street, Camden, NJ  08101

     d.     HOWARD Z. KANOWITZ
               4 Gettysburg Drive
               Voorhees, NJ 08043

     e.     ROBERT J. KELTOS
               1204 Delancey Way
               Marlton, NJ 08053

2.     This action relates to Lawyers Professional Liability Policy number EO406308,

issued by Colony to KKA for the policy period April 8, 2011 to April 8, 2012, and which was

cancelled effective December 27, 2011 (the "Policy").  Colony seeks rescission of the Policy, a

declaration that the Policy is void *ab initio*, and an award of damages as the result of fraud in the

application process, as set forth in more detail below.  In the event the Policy is not rescinded,

then in the alternative, Colony seeks a determination of the respective rights and obligations of the parties under the Policy with respect to certain underlying claims against the Defendants, and a Declaration that Colony has no obligation to defend or indemnify any of the Defendants, in whole or in part, with respect to such underlying claims.

## THE PARTIES

3.     Plaintiff, Colony Insurance Company, is a citizen of the Commonwealth of Virginia, being a corporation organized under the laws of the Commonwealth of Virginia and having its principal place of business in Richmond, Virginia.

4.     On information and belief, Defendant KKA is a citizen of the Commonwealth of Pennsylvania, being a Professional Corporation organized under the laws of the Commonwealth of Pennsylvania and having its principal place of business in Philadelphia, Pennsylvania. KKA is alleged in the Underlying Actions, as further defined below, to be the successor to Kwasnik, Rodio, Kanowitz, & Buckley, P.C., which, upon information and belief, was a professional corporation organized under the laws of the State of New Jersey and having its principal place of business in Cherry Hill, New Jersey.

5.     On information and belief, Defendant Kwasnik is a citizen of the Commonwealth of Pennsylvania, who maintains a residence at 623 Kater Street, Philadelphia, PA 19147.  Upon information and belief, Kwasnik is currently incarcerated in New Jersey.

6.     On information and belief, Defendant Kanowitz is a citizen of the State of New Jersey, residing at 4 Gettysburg Drive, Voorhees, New Jersey, 08043.

7.     On information and belief, Defendant Keltos is a citizen of the State of New Jersey, residing at 1204 Delancey Way, Marlton, New Jersey, 08053.

## JURISDICTION AND VENUE

8.      Jurisdiction is proper in this Court as there is complete diversity of citizenship between Plaintiff and all Defendants and the amount in controversy exceeds $75,000.00, exclusive of costs and interest.  *See* 28 U.S.C. §1332(a) and 28 U.S.C. § 2201.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the acts or omissions giving rise to this dispute occurred in this judicial district.

## COUNT I – FRAUD

### Against All Defendants

10.      Colony incorporates by reference the allegations set forth in paragraphs 1 through 9 above as though each were set forth at length herein.

11.      On February 10, 2011, Defendant Kwasnik, acting on behalf of and as an agent for Defendant KKA, completed and signed a "LAW FIRMS ERRORS & OMISSIONS APPLICATION" (the "Application") in conjunction with seeking professional liability insurance coverage from Colony on behalf of KKA.

12.      In submitting the Application, Kwasnik, as representative of and agent for KKA, acted on behalf of all insureds, including Defendant Kanowitz and (to the extent he is determined to be an "insured" under the policy) Defendant Keltos.  To that end, paragraph 9 of Section II of the Policy provides as follows:

> First "Named Insured" as Sole Representative
>
> The First "Named Insured" shall act on behalf of all insureds with respect to completing the "application" for this insurance, including representing the truth and completeness of all information as required in SECTION V- CONDITIONS ….

13.     In the Application, KKA, through its agent Kwasnik and on behalf of all Defendants, knowingly concealed relevant and material information, and provided false and incomplete information to Colony, in order to induce Colony to issue the Policy to KKA.

14.     Specifically, KKA, through its agent Kwasnik and on behalf of all Defendants, knowingly provided a false answer to Question 13a of the Application, which asked:

> After inquiry with each person as appropriate, in the last seven (7) years, has any professional liability claim or suit ever been made against the Firm or any predecessor firm or any current or former member of the Firm or predecessor firm?

15.     KKA, through its agent Kwasnik and on behalf of all Defendants, answered "no" to Question 13a.

16.     Prior to the time that KKA, through its agent Kwasnik and on behalf of all Defendants, answered Question 13a in the negative, both Kwasnik and KKA had been named as defendants in at least one civil lawsuit which included a claim for legal malpractice.  *See Federal Trade Commission v. Hope Now Modifications, LLC*, Civil Action No. 09-1204 (U.S.D.C. D. N.J.)

17.     By failing to disclose the legal malpractice claim made in the *Federal Trade Commission* lawsuit and instead answering Question 13a in the negative, KKA, through its agent Kwasnik and on behalf of all Defendants, made a knowing misrepresentation of facts material to Colony's consideration of the Application.

18.     KKA, through its agent Kwasnik and on behalf of all Defendants, also knowingly provided a false answer to Question 13c of the Application, which asked:

> After inquiry with each person as appropriate, has an attorney for who [sic] coverage is sought ever been refused admission to practice, been disbarred, suspended, reprimanded, sanctioned, or held in contempt by any court, administrative agency or regulatory body or been subject of a disciplinary complaint made to any of the aforementioned entities?

19.     At the time Kwasnik signed the Application on February 10, 2011 on behalf of

KKA, multiple disciplinary grievances and/or complaints had been made against Kwasnik:

    a.      On May 3, 2006, the New Jersey Office of Attorney Ethics initiated
            proceedings against Kwasnik at Docket No. XIV-2006-0226E, with
            respect to an alleged violation of New Jersey Rule of Professional
            Conduct 1.15.

    b.      On December 16, 2008, the Office of Attorney Ethics filed a formal
            complaint against Kwasnik for Complex Misconduct captioned *Office of
            Attorney Ethics v. Michael W. Kwasnik*, Supreme Court of New Jersey,
            District XIV Ethics Committee, Docket No. XIV-2006-0226E, containing
            allegations of a wide variety of misconduct, including, but not limited to
            allegations of: (1) knowing misappropriation of trust funds with respect to
            at least three separate clients; (2) conflicts of interest with respect to at
            least three separate clients; (3) at least three instances of misappropriations
            to cover business account shortages; and (4) submission of false
            information to the Camden County Board of Social Services.

    c.      On January 9, 2009, Romona Flitter filed a grievance with the Office of
            Attorney Ethics, alleging that Kwasnik engaged in a conflict of interest
            when he improperly and without authority invested $70,000 of money
            from Flitter's deceased aunt, Dorothy Stoloff, in Liberty State Financial
            Holding Company, in which Kwasnik and his father, William Kwasnik,
            held an interest.  The Office of Attorney Ethics later filed an amended
            complaint against Kwasnik, adding a count for knowing misappropriation
            of trust funds and conflict of interest with respect to Kwasnik's
            representation of Dorothy Stoloff.

20.     By failing to disclose the existence of these disciplinary complaints and/or

grievances in response to Question 13c of the Application, and instead answering Question 13c

in the negative, KKA, through its agent Kwasnik and on behalf of all Defendants, made a

knowing misrepresentation of facts material to Colony's consideration of the Application.

21.     KKA, through its agent Kwasnik and on behalf of all Defendants, also knowingly

provided a false answer to Question 13b of the Application, which asked:

        After inquiry with each person as appropriate, do you know of any
        circumstances, acts, errors or omissions that could result in a
        Professional Liability claim?

22.     KKA, through its agent Kwasnik and on behalf of all Defendants, answered "no" to this question.

23.     At the time he answered "no" to Question 13b, Kwasnik had actual knowledge of at least one set of circumstances that could result in a professional liability claim.  Specifically, the grievance filed by Romona Flitter with the Office of Attorney Ethics by letter dated January 9, 2009 expressly identified a potential malpractice claim against Kwasnik.

24.     In addition to the Flitter grievance and the *Federal Trade Commission* lawsuit, other civil and criminal actions have been commenced against Kwasnik, all of which contain allegations which demonstrate that Kwasnik had actual knowledge, prior to signing the Application on behalf of KKA and the other Defendants, of other circumstances, acts, errors or omissions that could result in a  Professional Liability claim.

25.     Specifically, the following civil and criminal actions currently pending against Kwasnik all contain allegations of circumstances, acts, errors or omissions prior to February 10, 2011 that could result in a Professional Liability claim:

    a.  On March 25, 2011, Clifford E. Frater ("Frater") filed a civil complaint against Kwasnik alleging that he had invested $804,000 from his life savings and the estate of his late wife, Dorothy, in a trust set up by Kwasnik through Liberty State Benefits.  The *Frater* complaint alleges that the entire $804,000 was invested with Liberty State Benefits as of December 30, 2009.  Since that time, despite repeated attempts by Frater, his son, and their attorney to gain access to the funds, Kwasnik has refused to cooperate or returned any of the funds, and remains trustee of the trust, despite numerous requests that he be removed.

    b.  In October 2011, Kwasnik and his father, William, were named as defendants in an adversary proceeding filed by the Chapter 11 trustee in *In re: Liberty State Benefits of Delaware, Inc.*, Case No. 11-12404 (Bankr. D. De.), in conjunction with the bankruptcy of Liberty State Benefits of Pennsylvania, a company owned or controlled by William Kwasnik. Michael Kwasnik was general counsel to the company.  The adversary complaint alleges, *inter alia*, that between December 29, 2009 and July 2010, Kwasnik, his firm, and a number of co-conspirators engaged in a "startling story of gross negligence, deceit, theft and conversion" (*see*

7

Adversary Complaint ¶ 65) to fraudulently transfer certain assets of the debtors "through the insider orchestrated pre-petition sale and conversion of the Debtors' beneficial interest therein." (Adversary Complaint ¶ 4). The adversary complaint contains specific allegations of legal malpractice against Kwasnik, Kanowitz, and their law firm. (Adversary Complaint ¶ 7). The complaint also contains specific allegations that Kwasnik took certain actions in which he acted on both sides of the transaction "in absolute conflict with his duties as counsel to the Debtors and Debtors' Board" and did so without obtaining waivers of the conflict of interest. (*See, e.g.*, Adversary Complaint ¶¶ 59-60).

c.   On November 4, 2011, in *State of New Jersey v. Michael W. Kwasnik*, Superior Court of New Jersey, Law Division – Criminal, Docket No. 11-11-00143-S, a Grand Jury handed down an indictment relating to Kwasnik's misappropriation of client funds between September 19, 2006 and December 6, 2006. The indictment contains four counts: (1) theft by failure to make required disposition of property received; (2) misapplication of entrusted property; (3) theft by unlawful taking; and (4) financial facilitation of criminal activity.

d.   On November 7, 2011, the Attorney General for the State of New Jersey amended its complaint in an action originally commenced in 2009, caption *Dow v. Michael William Kwasnik, Esq., et al.*, Superior Court of New Jersey Chancery Division, Essex County Docket No. ESX-C-59-11, for the purpose of adding Kwasnik as a defendant. The suit alleges that Kwasnik and the other defendants "raised approximately $8,491,525.15 through operation of a fraudulent scheme" in which Kwasnik and other defendants sold "unregistered three (3) year notes purporting to pay 12% annually … to investors through the use of misrepresentations, false statements, and omissions …." The complaint alleges, *inter alia*, that between January 1, 2008 and December 31, 2010, approximately $13.5 million of funds received from investors was commingled with other investor funds, of which $4.5 million was improperly transferred to Kwasnik's firm, and $391,054.55 was improperly transferred to Kwasnik himself. (Complaint ¶ 70).

26.   Upon information and belief, prior to signing the Application on February 10, 2011, Kwasnik had actual knowledge of the facts alleged in each of the civil and criminal actions described in the preceding paragraph, and was aware that those facts could give rise to professional liability claims.

27.   By failing to disclose the existence of the conduct and circumstances giving rise to the civil and criminal actions described in paragraphs 23 through 26 above, and instead

answering Question 13b of the Application in the negative, KKA, through its agent Kwasnik and on behalf of all Defendants, made a knowing misrepresentation of facts material to Colony's consideration of the Application.

28.     In addition to the foregoing misrepresentations, KKA, through its agent Kwasnik, knowingly failed to identify Defendant Keltos as an attorney associated with KKA in response to Question 3.A. of the Application.

29.     At the time he signed the Application on behalf of KKA and the other Defendants, Kwasnik had actual knowledge that the responses provided therein were false and incomplete.

30.     The subject matter of the omissions and misrepresentations in the Application for the Policy were material to the risk being insured.

31.     To that end, the truth of the representations in the Application was made an express condition of the Policy and KKA specifically acknowledged that (a) the Policy was issued in reliance upon the truth of such representations, and (b) such representations were material to Colony's decision to issue the policy.  Specifically, Condition 5 to the Policy contain a "Representations" provision which provides that:

> You, through your insurance agent or broker have provided information to us which has induced us to issue this policy. Included in this information are an "application" and other correspondence including history regarding your losses, "claims" or incidents which may give rise to "claims" or suits.  This history includes a listing of such losses, "claims" or incidents regardless of whether or not insurance may apply.
>
> This information is incorporated into the policy and is material to our decision to issue this policy. You should review this information carefully, as the truth of this information was of paramount importance in influencing our decision to offer the terms and conditions under which this policy is issued.

> You, on behalf of all insureds, warrant the truth of such
> information as of the effective date of this policy. You declare that
> you know of no "claim," incident, event, offense or circumstances
> which has taken place or becomes known prior to the effective date
> of this policy which may render inaccurate, untrue, incomplete or
> misleading any information or statement made in the "application
> or other correspondence which is provided.
>
> You understand that if such information is false or misleading, it
> may limit or void coverage under this policy.

32.     KKA, through Kwasnik and on behalf of the other Defendants, intended that

Colony would rely upon the misrepresentations.

33.     Colony issued the Policy in reliance upon the truth and completeness of the

statements made in the Application by KKA, through Kwasnik and on behalf of the other

Defendants.

34.     KKA thus obtained insurance from Colony by fraud.

35.     Because the Policy was obtained by fraud, Colony is entitled to rescind the Policy

*ab initio*.

36.     As a consequence of the rescission of the Policy and pursuant to reservation of

rights letters issued by Colony, Colony is also entitled to reimbursement and/or restitution for the

amount of the defense costs it has paid or will pay on behalf of Kanowitz and Keltos.

37.     KKA paid a premium for the Policy in the amount of $11,275, exclusive of taxes

and fees. Any return premium to which KKA might otherwise be entitled as the result of the

rescission of the Policy may be offset by the defense costs Colony will incur on behalf of

Kanowitz and Keltos in the Underlying Actions. Colony is entitled to credit the return of the

premium against the money it is due as reimbursement and/or restitution for the defense costs it

has paid or will pay on behalf of Kanowitz and Keltos. In the alternative, if so required, Colony

is prepared to return the premium amount directly to KKA upon the Order of this Court.

## COUNT II – DAMAGES UNDER THE NEW JERSEY INSURANCE FRAUD PREVENTION ACT

### Against Defendants KKA and Kwasnik

38.     Colony incorporates by reference the allegations set forth in paragraphs 1 through 37 above as though each were set forth at length herein.

39.     The New Jersey Insurance Fraud Prevention Act, N.J.S.A. section 17:33A *et seq.* (the "Act") provides that a person violates the Act if he, "Prepares or makes any written or oral statement, intended to be presented to any insurance company or producer for the purpose of obtaining … (b) an insurance policy, knowing that the statement contains any false or misleading information concerning any fact or thing material to an insurance application or contract …." *Id.* section 17:33A-4a.(4)(b).

40.     Section 17:33A-7(a) provides that any insurance company to which a false statement has been made in violation of the Act may recover compensatory damages, "which shall include reasonable investigation expenses, costs of suit and attorneys fees."

41.     KKA, through its agent Kwasnik, violated the Act by making multiple false and misleading statements for the purpose of obtaining the Policy in a manner which constitutes a pattern of misconduct and which caused damage to Colony, all as described in more detail in the preceding paragraphs.

## COUNT III – DECLARATORY JUDGMENT

### Against All Defendants

42.     Colony incorporates by reference the allegations set forth in paragraphs 1 through 41 as though each were set forth at length herein.

43.     In the event this Court declines to grant Colony a full rescission of the Policy as requested in Count I, then, in the alternative, Colony requests that the Court declare the rights

and obligations of the parties under the Policy with respect to certain underlying actions, as more

fully described below.

### Background Allegations Supporting Colony's Request for a Declaratory Judgment - Terms, Conditions and Exclusions of the Policy

44.  The Policy contains the following insuring agreement for claims for damages

arising from legal services:

> Insuring Agreement
>
> a.  We will pay, in excess of the Deductible shown in the Declarations, those sums any insured becomes legally obligated to pay as "damages" because of an act, error or omission arising out of your "legal services" rendered or that should have been rendered.  We will have the right and duty to defend any insured against any "claim" seeking those "damages."
>
> b.  This insurance applies to "claims" for "damages" only if:
>
> (1)  The "damages" arise out of an act, error or omission in the conduct of an insured's "legal services";
>
> (2)  The "damages" arise out of "legal services" that took place subsequent to the Policy effective date or Retroactive Date, if applicable, and prior to the expiration of the Policy;
>
> (3)  The "claim" is reported in writing to us subsequent to the effective date and prior to the expiration date of the "Policy Period" or Extended Reporting Periods, if applicable; and
>
> d.  All "claims" that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision, regardless of the number of "claims", "insureds", or claimants, will be considered to be one "claim" and will be deemed to have taken place at the time the first of these related "claims" is made against any insured and reported to us.  All "claims" based upon such logically or causally connected "claims" shall be deemed to constitute a single "claim", and shall be subject to a single Deductible and the amount stated in the Declarations as LIMITS OF INSURANCE – EACH CLAIM.

45.  The Policy contains the following exclusions:

> This Policy does not apply to any "claim":

a.      Based on or directly or indirectly arising from:

(1)      A "Legal Service" rendered prior to the effective date of the Policy if any insured knew or could have reasonably foreseen that the "Legal Service" could give rise to a "Claim";

(2)      Any common fact, circumstance, transaction advice or decision involved in a "legal service" reported as a "claim" or potential "claim" under any prior Policy; or

(3)      Any "claim", suit, act, error or omission disclosed in the "application" for this Policy.

*          *          *

c.      Based on or directly or indirectly arising out of the insured's services or capacity as an accountant or tax advisor, real estate agent or broker, investment advisor or broker or insurance agent or broker;

*          *          *

j.      Based on or directly or indirectly arising out of or resulting from:

(1)      Any act committed with knowledge of its wrongful nature or with the intent to cause damage;

(2)      The gaining by any insured of any personal profit, gain or advantage to which an insured is not legally entitled; or

(3)      Any criminal, fraudulent, or dishonest act.

However, we shall defend such allegations against any insured if it involves a "claim" otherwise covered under the Policy until final adjudication.

46.    Section V of the Policy contains the following condition:

Duties in the Event of a "Claim"

a.      If during the "policy period" of any Extended Reporting Period (if applicable) a "claim is brought against any insured arising out of an event or circumstance, you must:

(1) Immediately record the specifics of the "claim" or suit and the date received;

13

(2) Provide us with written notice of the "claim" or suit as soon as practicable, but in no event later than thirty (30) days after the end of the "policy period" or before the end of any Extended Reporting Period (if applicable);

(3) Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the "claim" or suit; and

(4) Cooperate with us in the Investigation, defense or settlement of the "claim" including:

(a) Upon request, submit to examination and interrogation under oath by our representative;

(b) Attend hearings, depositions and trials as requested by us;

(c) Assist in securing and giving evidence and obtaining the attendance of witnesses; and

(d) Provide written statements to our representative and meetings with such representative for the purpose of investigation and/or defense, all without charge to us.

b.       No insured will, except at an insured's own costs, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

47.       Section VII of the Policy contains the following definitions:

2.       "Claim" means a demand for monetary "damages" arising out of "legal services" made against any insured by service of suit, the institution of arbitration or administrative proceedings or otherwise, but does not include a demand for equitable or non-pecuniary relief.

3.       "Damages" means judgments, awards and settlements an insured is legally obligated to pay as a result of a "claim" to which this policy applies.

*       *       *

5.       "Legal Services" means the usual and customary services of a licensed lawyer in good standing acting by or on behalf of the "Named Insured" described in the Declarations of this Policy ….

## Identification of the Underlying Actions

48. On November 14, 2011, Jerome Emdur, individually, and as Executor of the Estate of Ann Emdur ("Emdur"), commenced an action by order to show cause in the Superior Court of New Jersey, Camden County, against defendants KKA, Kwasnik, Kanowitz and Keltos. The complaint also names as a defendant the alleged predecessor firm to KKA, Kwasnik, Rodio, Kanowitz & Buckley, P.C. (hereinafter "KRKB") and John Does 1-50.  Emdur alleges, *inter alia*, that Kwasnik defrauded him and his late wife by persuading them to create an inter vivos trust containing nearly all of their assets, with Kwasnik as the trustee, for the purpose of misappropriating the assets.  The complaint alleges that Kwasnik also forged Ann Emdur's name on a check for $30,000 and deposited it into the trust.

49. The *Emdur* complaint asserts twelve causes of action, including counts for injunctive relief, declaratory judgment, breach of fiduciary duty, conversion, legal malpractice, waste of the trust's assets, violation of New Jersey's Prudent Investor Act, breach of contract, legal and equitable fraud, and an accounting of the assets of the trust.  All defendants are alleged to be liable on each cause of action on the basis that they were involved in the alleged wrongdoing or share liability based on principles of joint liability or *respondeat superior*.

50. On December 14, 2011, Connie L. Petrillo and Thomas Petrillo, Jr. commenced an action by order to show cause in Camden County Superior Court, New Jersey, against KKA, Kwasnik, Kanowitz, the alleged predecessor firm, KRKB and John Does 1-50.  The Petrillos allege that in October 2007, they retained Howard Kanowitz and KRKB to represent them in a personal injury claim.  The personal injury claim was settled in September 2011 for the amount of $485,000, from which the Petrillos expected to recover $324,118.83 after fees and expenses. Kanowitz allegedly requested the Petrillos' permission to deposit the settlement check into the firm's trust account without their endorsement.

15

51.     The Petrillos further allege that they subsequently learned that Michael Kwasnik had been indicted, whereupon they contacted the firm to request payment of their net share of the settlement amount.  They were allegedly advised by Kanowitz, however, that their money was not in the account and had been apparently diverted to another firm account with Bank of America.  As of the date of the complaint, the Petrillos maintain that they have not received payment of their net share of the settlement proceeds and they did not know "whether one, some or all of the Defendants have misappropriated the net proceeds."

52.     The *Petrillo* complaint contains nine causes of action, including counts for injunction, breach of fiduciary duty, conversion, legal malpractice, breach of contract, legal and equitable fraud, and an accounting of the settlement proceeds.

53.     All defendants are alleged to be liable on each cause of action on the basis that they were involved in the alleged wrongdoing or share liability based on principles of joint liability or *respondeat superior*:

54.     The *Emdur* and *Petrillo* actions are referred to herein as the "Underlying Actions."

### Declaratory Relief Is Appropriate.

55.     Defendant Kanowitz has tendered both of the Underlying Actions to Colony for defense and indemnification under the Policy.

56.     Upon information and belief, Kanowitz, as an alleged representative of KKA, also may seek to have Colony defend and indemnify KKA under the Policy with respect to the Underlying Actions.

57.     Defendant Keltos has tendered the *Emdur* action to Colony for defense and indemnification under the Policy.

58.     Colony is presently providing a defense to Defendants Kanowitz and Keltos subject to a full reservation of rights to disclaim coverage upon further investigation, and/or subject to a determination in this action of Colony's claim for fraud and rescission.  Colony has denied coverage as to KKA.

59.     Thus, there exists an actual controversy between Colony and the Defendants within the jurisdiction of this Court and involving Colony's rights and obligations under the Policy, which controversy may be determined by a judgment of this Court.

60.     Pursuant to 28 U.S.C. sec. 2201 *et seq.*, Colony is entitled to a judicial determination of its rights and obligations, if any, under the Policy, with respect to any "claims" within the meaning of the Policy in general, and with respect to the Underlying Actions in particular.

## Basis for Request for Declaratory Judgment

61.     The Policy affords no coverage for the Underlying Actions, in whole or in part, for one or more of the following reasons.

62.     With respect to Defendant Keltos, the Policy affords no coverage because Keltos was not disclosed by KKA in the Application as an attorney associated with the firm, which disclosure is expressly made a condition to coverage by the Policy, and no premium was paid for coverage for Keltos.

63.     The Policy applies only to "claims" for "damages," which are defined as claims for monetary compensation and not claims for equitable or other non-pecuniary relief.  The claims in the *Emdur* action for a preliminary injunction (Count I), declaratory relief (Count II) and for an accounting (Count XI) seek only equitable and/or non-pecuniary relief and, therefore, do not qualify as claims for damages within the meaning of the policy.  Similarly, the claims in

17

the *Petrillo* action for injunctive relief (Count I) and for an accounting (Count VIII) do not qualify as claims for damages because they seek only equitable and/or non-pecuniary relief.

64.     Exclusion "j" of the Policy excludes coverage for any claim for damages arising from any act committed with knowledge of its wrongful nature or with the intent to cause damage, or an act by which the insured seeks to obtain profit or advantage to which he is not entitled, or "any criminal, fraudulent or dishonest act."  Both the *Emdur* and *Petrillo* actions allege that Michael Kwasnik and others in the firm committed acts of conversion and fraud for the purpose of misappropriating client funds for their own use or profit.  Exclusion "j" bars coverage for all such claims to the extent Defendants are ultimately held liable on that basis.

65.     The Policy affords no coverage for any Defendant for the claims for punitive damages in the *Emdur* and *Petrillo* actions because punitive damages are not insurable as a matter of public policy.  Also, punitive damages are not covered under the terms of the Policy because (1) they do not qualify as "damages" for harms actually suffered by the plaintiffs, but rather are intended as a form of punishment designed to deter further wrongdoing, and (2) exclusion "l" of the policy excludes coverage for "any fine, sanction or penalty of any nature against any insured."

66.     The Policy affords no coverage for any Defendant to the extent that the Underlying Actions arise from "legal services" rendered prior to the policy retroactive date, which is the same as the effective date of the policy, April 8, 2011.

67.     The Policy affords no coverage for any Defendant to the extent the Underlying Actions allege wrongdoing of the insured that does not qualify as "legal services" as defined in the Policy.

68.    The Policy affords no coverage for claims arising from any insured's activities as an accountant, tax advisor or investment advisor.

69.    Colony is entitled to an allocation of defense costs incurred on behalf of Kanowitz and Keltos between covered and non-covered claims and reimbursement of defense costs paid with respect to non-covered claims.

70.    The Policy affords no coverage to the extent that any other term, condition or exclusion of the Policy precludes coverage.  Colony reserves the right to seek a determination that the Underlying Actions are not covered under the Policy on any additional bases that become apparent upon further investigation and discovery.

71.    In addition, Kanowitz and Keltos have notified Colony of the names of certain persons whom they believe may assert claims, but who have not yet done so.  In the event any such additional claims are asserted, Colony reserves the right to seek a determination in this action that such claims are not covered under the Policy, either in whole or in part.

<u>**DEMAND FOR RELIEF**</u>

**WHEREFORE**, Colony Insurance Company respectfully demands that the Court enter judgment in its favor and against Defendants as follows:

a.    Under Count I, declaring that the Policy, Policy No. EO406308, is rescinded *ab initio* on the basis of fraud, and, as such, Colony has no duty to defend or indemnify KKA or any other insured or alleged insured under the Policy, with respect to any Underlying Action or with respect to any past, present or future "claim" made under the Policy;

b.    Under Count I, awarding Colony an amount equal to (a) the amount expended by Colony to defend Kanowitz and Keltos against the Underlying Actions, <u>less</u> (b) the amount of the premium paid by KKA to Colony for the Policy;

c.    Under Count II, awarding judgment based on the violation of N.J.S.A. section 17:33A-4(a), and awarding compensatory damages pursuant to N.J.S.A. section 17:33A-7(a), including, but not limited to, Colony's

reasonable investigation expenses, costs of suit and attorneys fees, and treble damages;

d.    In the alternative, under Count III, declaring the rights, duties, and obligations of the parties under the law, the Policy and the facts;

e.    Awarding Colony its costs and attorneys' fees; and

f.    Granting such other and further relief as this Court deems just, fitting and proper.

**WHITE AND WILLIAMS LLP**

BY:    /s/ Michael E. DiFebbo
        ROBERT F. WALSH
        MICHAEL E. DIFEBBO
        1800 One Liberty Place
        Philadelphia, PA  19103
        215-864-7000

Dated: February 7, 2012                    *Attorneys for Plaintiff,*
                                          *Colony Insurance Company*

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all issues so triable.

**WHITE AND WILLIAMS LLP**

BY:    /s/ Michael E. DiFebbo
        ROBERT F. WALSH
        MICHAEL E. DIFEBBO
        1800 One Liberty Place
        Philadelphia, PA  19103
        215-864-7000

Dated: February 7, 2012                    *Attorneys for Plaintiff,*
                                          *Colony Insurance Company*

# EXHIBIT B

to Declaration of Robert F. Walsh in Support of
Colony Insurance Company's Motion for
Summary Judgment/Motion to Enter Default
Judgment



*Colony Insurance Company*
*Colony National Insurance Company*
*Colony Specialty Insurance Company*

# PRIVACY NOTICE

Privacy is important to us.  We understand that consumers really care about their privacy and want it to be protected.  We are committed to safeguarding nonpublic personal information we collect about our consumers.

We treat personal information carefully and take steps to assure that it remains private.  We allow only authorized employees to have access to personal information. We maintain physical, electronic and procedural security protections to safeguard the information in our records.

In order to conveniently and effectively provide and service the insurance products we sell, we may collect and use personal information from consumers on applications or other forms; from our transactions with consumers, such as payment and claims history; and from third parties, such as credit reports, driving and medical records, and claims history.

Except as required or permitted by law, we do not share personal information outside our company without obtaining the consumer's permission.

Keeping consumer information accurate and up to date is important to us. Consumers may see and request correction of personal information about them in our files, or contact us with questions about our privacy policy by writing to Privacy Coordinator, Colony Group, PO Box 85122, Richmond, Virginia 23285.

COL 01 0040



IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and Secretary as duly authorized representatives of the Company.

Louis Levinson, President                                   Craig Comeaux, Secretary

**Colony Insurance Company**
**Colony Specialty Insurance Company**
**Colony National Insurance Company**
8720 Stony Point Parkway, Suite 300
Richmond, VA  23235

ZPJCG-0810

COL 01 0041

NJ SLA  #00000-11-00036

## LAWYERS PROFESSIONAL LIABILITY DECLARATIONS

**COLONY INSURANCE COMPANY**
**8720 STONY POINT PARKWAY**
**SUITE 300**
**RICHMOND, VA 23235**                                                       **DATE ISSUED**
**(800) 577-6614 (All Inquiries)**                                           05/04/2011 JC2

In consideration of the premium, insurance under all sections of this policy is provided to the "named insured" only with respect to those coverages for which a limit of liability is shown, subject to all the terms of this policy including forms and endorsements made part thereof.

### THIS IS A CLAIMS MADE POLICY.  PLEASE READ IT CAREFULLY.
### RETROACTIVE DATE: 04/08/2011

INCEPTION:  12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN

**1.  NAME AND MAILING ADDRESS OF NAMED INSURED:**

     KWASNIK, KANOWITZ & ASSOCIATES, P.C.
     2050 SPRINGDALE RD., SUITE 200
     CHERRY HILL, NJ 08003

**2.  AGENCY NAME AND MAILING ADDRESS:**

     APOGEE INSURANCE GROUP, A DIV OF GATEWAY UW AGENCY, INC.
     489 DEVON PARK DR., SUITE 301
     WAYNE, PA 19087

**3.  POLICY NUMBER:**      EO406308

**4.  POLICY PERIOD:**      04/08/2011  TO  04/08/2012

**5.  COVERED PROFESSIONAL SERVICES:**   THE PRACTICE OF LAW

**6.  LIMIT OF INSURANCE:**

     a.      $1,000,000.00      Each Claim
     b.      $1,000,000.00      Aggregate

**7.  DEDUCTIBLE:**

     a.      $10,000.00      Per Claim Deductible
     b.      N/A      Aggregate Deductible

**8.  PREMIUM:**

     Flat Premium:   $11,275.00
     Fees:      $0.00

**9.  OPTIONAL SUPPLEMENTAL EXTENDED REPORTING PERIOD:**

     One Year:      100   % of the annual premium shown in Item 8.
     Three Years:   175   % of the annual premium shown in Item 8.
     Five Years:   250   % of the annual premium shown in Item 8.

     Restrictions apply.  See Section VI of the policy for details.  Must be requested in writing and premium paid within thirty (30) days of expiration or termination.

**10. FORMS AND ENDORSEMENTS ATTACHED AT INCEPTION:**

| | | | | |
|---|---|---|---|---|
| AP081-0909 | LPL0001-0907 | LPL029-1007 | LPL041B-0108 | LPL045-1007 |
| PRIVACYNOTICE-0408 | U002-0904 | U094-0702 | U577-0908 | ZPJCG-0810 |

_____
Signature of Authorized Representative

LPLDEC (01/08)    This Declarations Page and the Forms and Endorsements listed above and attached hereto    Page 1 of 1
complete the above numbered Policy.

COL 01 0042

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SERVICE OF SUIT

Service of process may be made upon the Company to:

Claims Manager
  Colony Insurance Company,
  Colony National Insurance Company, or
  Colony Specialty Insurance Company
8720 Stony Point Parkway, Suite 300
Richmond, Virginia 23235

Where required by statute, regulation or other regulatory directive, the Company appoints the Commissioner of Insurance, or other designee specified for that purpose, as its attorney for acceptance of service of all legal process in the state in any action or proceeding arising out of this insurance.

The Commissioner or other designee is requested to forward process to the Company as shown above, or if required in his/her particular state, to a designated resident agent for service of process.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U094-0702                                                   Page 1 of 1

# LAWYERS PROFESSIONAL LIABILITY POLICY

THIS IS A CLAIMS MADE AND REPORTED POLICY
PLEASE READ CAREFULLY

### PROVISIONS

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy the words "you" and "your" refer to the "Named Insured" shown in the Declarations, and any other person or organization qualifying as a "Named Insured" under this Policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION II - WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION VII - DEFINITIONS.

In consideration of payment of the premium, in reliance upon the statements in the "application" (and all attachments and materials submitted therewith), and subject to all the provisions of this Policy, we agree with you as follows:

## SECTION I – COVERAGES

1.  Insuring Agreement

    a.  We will pay, in excess of the Deductible shown in the Declarations, those sums any insured becomes legally obligated to pay as "damages" because of an act, error or omission arising out of your "legal services" rendered or that should have been rendered. We will have the right and duty to defend any insured against a "claim" seeking those "damages." However, we will have no duty to defend any insured against any "claim" seeking "damages" for "legal services" to which this insurance does not apply. We may, at our discretion, investigate any "claim" or suit and settle any "claim" that may result, subject to SECTION V – CONDITIONS, 10. Limited Consent To Settle. But:

        (1) The amount we will pay for "damages" is limited as described in SECTION III – LIMITS OF INSURANCE AND DEDUCTIBLE;

        (2) Our right and duty to defend end when we have used up the applicable Limits of Insurance in the payment of judgments, settlements or defense costs.

    b.  This insurance applies to "claims" for "damages" only if:

        (1) The "damages" arise out of an act, error or omission in the conduct of an insured's "legal services";

        (2) The "damages" arise out of "legal services" that took place subsequent to the Policy effective date or Retroactive Date, if applicable, and prior to the expiration of the Policy;

        (3) The "claim" is reported in writing to us subsequent to the effective date and prior to the expiration date of the "Policy Period" or Extended Reporting Periods, if applicable; and

        (4) A potential "claim", event or circumstance that could give rise to a subsequent covered "claim" is reported in writing to us during the "policy period."

    c.  All "claims" for "damages" arising out of "legal services" to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against any insured and reported to us.

    d.  All "claims" that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision, regardless of the number of "claims", "insureds", or claimants, will be considered to be one "claim" and will be deemed to have taken place at the time the first of these related "claims" is made against any insured and reported to us.  All "claims" based upon such logically or causally connected "claims" shall be deemed to constitute a single "claim", and shall be

COL 01 0044

subject to a single Deductible and the amount stated in the Declarations as LIMITS OF INSURANCE – EACH CLAIM.

e.  We will pay, with respect to any "claim" or suit against an insured:

(1) All fees, costs or expenses resulting from the defense and appeal of a covered "claim" other than salary costs of our employees;

(2) All expenses we incur;

(3) The cost of bonds to release attachments, but only for bond amounts within the applicable Limits of Insurance;

(4) All reasonable expenses incurred by any insured at our request to assist in the investigation or defense of a "claim" or suit, including actual loss of earnings up to $500 a day because of time missed from work;

(5) All costs taxed against any insured in a suit;

(6) Prejudgment interest awarded against an insured on that part of the judgment we pay. If we make an offer to pay the applicable Limits of Insurance, we will not pay any prejudgment interest based on that period of time after the offer;

(7) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limits of Insurance;

(8) Reasonable and necessary amounts paid for legal fees and expenses incurred by an insured to investigate and defend disciplinary proceedings incurred will be reimbursed upon submission to the Company of satisfactory written proof of such legal fees and expenses, provided that:

(a) The act giving rise to the disciplinary proceeding is based upon or arises out of "legal services" provided by or on behalf of the "Named Insured";

(b) The act giving rise to the disciplinary proceeding took place subsequent to the Policy effective date or Retroactive Date, if applicable, and prior to the expiration of the "Policy Period;"

(c) As of the effective date of this Policy, no insured had knowledge of such disciplinary proceeding or any fact, circumstance, situation or incident which would reasonably lead to a belief that such disciplinary proceeding was likely; and

(d) The event is reported to us in writing during the "Policy Period."

The total limit for reimbursement under this Policy for all eligible disciplinary proceedings reported shall not exceed $10,000. No reimbursement pursuant to this section (8) will be made for any payment by or on behalf of the insured for taxes, criminal or civil fines, penalties, sanctions, registration or licensing fees, or any monetary judgment, award or settlement of any kind.

All payments made under this Item e. reduce the Limits of Insurance.

2. Exclusions

This Policy does not apply to any "claim":

a.  Based on or directly or indirectly arising from:

(1) A "Legal Service" rendered prior to the effective date of the Policy if any insured knew or could have reasonably foreseen that the "Legal Service" could give rise to a "Claim";

(2) Any common fact, circumstance, transaction advice or decision involved in a "legal service" reported as a "claim" or potential "claim" under any prior Policy; or

(3) Any "claim", suit, act, error or omission disclosed in the "application" for this Policy.

b.  Based on or directly or indirectly arising from an insured's "legal services" for:

COL 01 0045

(1) Any other insured under the Policy;

(2) Any firm, organization, entity or trust not named in the Declarations in which any insured

    (a) has or had any ownership interest,

    (b) is or was a director, officer, partner, principal, shareholder or employee, or

    (c) at any time managed, operated or exercised direct or indirect control;

however (2) above does not apply to any entity that qualifies as "predecessor firm" or for "legal services" provided to an entity in which any Insured, individually or collectively have ownership representing 10% or less of the ownership of that entity.

c. Based on or directly or indirectly arising out of the insured's services or capacity as an accountant or tax advisor, real estate agent or broker, investment advisor or broker, or insurance agent or broker;

d. Based on or directly or indirectly arising out of the rights or duties under any agreement including disputes over fees for services;

e. Based on or directly or indirectly arising out of any liability assumed by any insured under any contract or agreement.  This exclusion does not apply to liability any insured would have incurred in the absence of such contract or agreement;

f. Based on or directly or indirectly arising out of any actual or alleged bodily injury to or sickness, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof;

g. Based on or directly or indirectly arising out of or resulting from an act, error, or omission of an individual or entity with whom any insured shares common office space or common office facilities who is not an insured under this Policy;

h. Based on or directly or indirectly arising out of or resulting from any insured's activities performed in the capacity of a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto; except if any insured is deemed to be a fiduciary solely by reason of legal advice rendered with respect to any employee benefit plan;

i. Based on or directly or indirectly arising out of or resulting from any insured's capacity as an elected public official or as an employee of a governmental body, subdivision, or agency thereof unless an insured is deemed as employee solely by virtue of rendering "legal services" to such governmental body, the remuneration for which services inures to the benefit of an insured;

j. Based on or directly or indirectly arising out of or resulting from:

    (1) Any act committed with knowledge of its wrongful nature or with the intent to cause damage;

    (2) The gaining by any insured of any personal profit, gain or advantage to which an insured is not legally entitled; or

    (3) Any criminal, fraudulent, or dishonest act.

However, we shall defend such allegations against any insured if it involves a "claim" otherwise covered under the Policy until final adjudication.

k. Based on or directly or indirectly arising out of any "claim" based on discrimination by any insured on the basis of age, color, race, sex, creed, national origin, marital status, handicap, physical disability or sexual preference;

l. For payment of any fine, sanction or penalty of any nature against any insured;

m. Relating in whole or in part to the dissolution of any law firm unless an insured is not a party in the dissolution and the "claim" is based on or directly or indirectly arises out of any insured's representation of one or more parties to the dissolution;

n. Based on or directly or indirectly arising out of or resulting from:

COL 01 0046

(1) The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "hazardous materials" at any time;

(2) Any loss, cost or expense arising out of any:

  (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "hazardous materials"; or

  (b) "Claim" or suit by or on behalf of a governmental authority for "damages" because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "hazardous materials".

(3) The failure to discover or disclose the existence or amount of "hazardous materials";

(4) Any obligations to share "damages" with or indemnify another party whom must pay "damages" because of injury or damage relating to "hazardous materials"; or

(5) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with paragraphs (1), (2), (3), or (4) above; whether or not such "hazardous material(s)" has any function in your business, operations, premises, site or location.

This exclusion does not apply to an act, error or omission by or on behalf of the "Named Insured" in providing "legal services" that are otherwise covered by this policy.

o. Based upon or directly or indirectly arising out of any insured's capacity as a beneficiary or distributee of any trust or estate.

p. Based on or directly or indirectly arising out of any insured's failure or refusal to hire or employ; or any insured's termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or any other breach of duty arising out of employment-related practices, policies, acts, or omissions.

q. For infringing upon another's patent, copyright, trademark, trade secret, trade dress, slogan, advertising idea or other intellectual property.

## SECTION II – WHO IS AN INSURED

1. The "Named Insured" stated in the Policy Declarations and any "predecessor firm" of the "Named Insured."

2. Any person who is or was your partner, officer, member, director, stockholder, of counsel or independent contractor but only for "legal services" rendered on your behalf or on behalf of any "predecessor firm."  However this provision does not include any such member, partner, officer, director, stockholder, of counsel or independent contractor who joins your firm after the inception date of this Policy unless reported to us as required in SECTION V – CONDITIONS, 12. Change in Membership of the Firm, and so acknowledged by us.

3. Any non-lawyer who is or was your employee but solely while acting on your behalf or on behalf of any "predecessor firm".

4. The heirs, executors, administrators and legal representatives of each insured, as defined in 1., 2. and 3. above, in the event of death, incapacity or bankruptcy of such insured, but only for liability arising out of "legal services" rendered by any insured prior to such insured's death, incapacity, or bankruptcy.

## SECTION III – LIMITS OF INSURANCE AND DEDUCTIBLE

1. Our liability for each "claim" covered under this Policy shall not exceed the amount stated in the Declarations as LIMITS OF INSURANCE – EACH CLAIM. This limit is the maximum amount for which we are liable for the sum of all fees, costs and expenses incurred in the defense of and "damages" paid on each "claim" or suit covered hereunder.

COL 01 0047

2. Subject to LIMITS OF INSURANCE – EACH CLAIM, our liability for all "claims" covered under this Policy shall not exceed the amount stated in the Declarations as LIMITS OF INSURANCE – AGGREGATE. This limit is the maximum amount for which we are liable for the sum of all fees, costs and expenses incurred in the defense of and "damages" paid for all "claims" covered under this Policy.

3. The number of insureds covered by the Policy shall not operate to increase the Limits of Insurance.

4. Two or more "claims" or suits arising out of the same, related or continuous "legal services" shall be considered a single "claim."

5. If two or more Polices of insurance issued by us apply to the same "claim" or "claims" for which any insured is legally liable, we shall not be liable under this Policy for more than the Limits of Insurance of that Policy issued by us which has the highest applicable Limits of Insurance. If the Limits of Insurance on each Policy is the same, only one limit will apply.

6. Our obligation under the Policy to pay "damages" on your behalf applies only to the amount of "damages" in excess of any Deductible amounts stated in the Declarations as applicable to such coverage.

   We, at our sole election and option, may pay any part of or all the Deductible amount to effect settlement of any "claim" or suit, and upon notification of the action taken, you shall reimburse us within thirty (30) days for such part of the Deductible amount as has been paid by us.

   If an aggregate deductible is indicated in the Declarations, this Deductible applies as follows:

   a. All amounts you pay as Deductibles will be limited to the amount shown as the Aggregate Deductible; and

   b. All "damages" and fees, costs and expenses incurred in the defense of a suit will apply towards this Aggregate Deductible.

## SECTION IV – TERRITORY

This Policy only applies to "claims" which are brought in the United States, its territories or possessions, or Canada.

## SECTION V – CONDITIONS

1. Bankruptcy

   Bankruptcy or insolvency of any insured or of the estate of an insured will not relieve us of our obligations under this Policy.

2. Duties in the Event of a "Claim"

   a. If during the "policy period" or any Extended Reporting Period (if applicable) a "claim" is brought against any insured arising out of an event or circumstance, you must:

      (1) Immediately record the specifics of the "claim" or suit and the date received;

      (2) Provide us with written notice of the "claim" or suit as soon as practicable, but in no event later than thirty (30) days after the end of the "policy period" or before the end of any Extended Reporting Period (if applicable);

      (3) Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the "claim" or suit; and

      (4) Cooperate with us in the investigation, defense or settlement of the "claim" including:

         (a) Upon request, submit to examination and interrogation under oath by our representative;

         (b) Attend hearings, depositions and trials as requested by us;

         (c) Assist in securing and giving evidence and obtaining the attendance of witnesses; and

         (d) Provide written statements to our representative and meetings with such representative for the purpose of investigation and/or defense, all without charge to us.

COL 01 0048

b. No insured will, except at an insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Notice of Potential "Claims"

If, during the "policy period", the First "Named Insured" shall become aware of any event or circumstance which may reasonably be expected to give rise to a "claim" being made against any insured, the First "Named Insured" must notify us in writing during the "policy period."  The written notice shall include:

a. Specific details of the event or circumstances and why you believe it may give rise to a "claim;"

b. The names and addresses of any injured persons and potential claimants;

c. The names and addresses of any witnesses and the person(s) who committed or caused the possible event or circumstance; and

d. Any written notice from the potential claimant describing the event or circumstance.

If this notice is submitted to us during the "policy period", then any "claim" that is subsequently made against any insured arising out of this event or circumstance about which notice was given to us shall be deemed for the purpose of this Policy to have first been made during the "policy period."  This provision shall not apply to, nor shall the reporting of events, circumstances, or potential "claims" be permitted, during any Basic or Supplemental Extended Reporting Period.

4. Legal Action Against Us

No person or organization has a right under this Policy:

a. To join us as a party or otherwise bring us into a suit asking for "damages" from an insured; or

b. To sue us on this Policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial but we will not be liable for "damages" that are not payable under the terms of this Policy or that are in excess of the applicable Limits of Insurance.  An agreed settlement means a settlement and release of liability signed by us, an insured and the claimant or the claimant's legal representative.

5. Other Insurance

If other valid and collectible insurance is available to an insured for a "claim" we cover under this Policy, our obligations are limited as follows:

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, available to an insured for any "claim" or suit covered hereunder, unless such insurance is written as a specific excess insurance policy for limits in excess of this policy.  This insurance is also excess of any indemnification agreement requiring another party to indemnify and/or hold harmless an insured under this policy.

6. Representations

You, through your insurance agent or broker have provided information to us which has induced us to issue this policy.  Included in this information are an "application" and other correspondence including history regarding your losses, "claims" or incidents which may give rise to "claims" or suits.  This history includes a listing of such losses, "claims" or incidents regardless of whether or not insurance may apply.

This information is incorporated into the policy and is material to our decision to issue this policy.  You should review this information carefully, as the truth of this information was of paramount importance in influencing our decision to offer the terms and conditions under which this policy is issued.

You, on behalf of all insureds, warrant the truth of such information as of the effective date of this policy.  You declare that you know of no "claim", incident, event, offense or circumstance which has taken place or becomes known prior to the effective date of this policy which may render inaccurate, untrue,

COL 01 0049

incomplete or misleading any information or statement made in the "application" or other correspondence which is provided.

You understand that if such information is false or misleading, it may limit or void coverage under this policy.

7. Transfer Of Rights Of Recovery Against Others To Us

If an insured has rights to recover all or part of any payment we have made under this Policy, those rights are transferred to us. No insured may do anything after a loss to impair our rights to recover any payment made under this policy. At our request, the insured will bring suit or transfer those rights to us and help us enforce them.

8. Cancellation and Non-Renewal

This Policy may be cancelled by the First "Named Insured" by surrender thereof to us or by mailing to us written notice stating when thereafter the cancellation shall be effective. We may cancel this Policy by mailing a written notice to the First "Named Insured" at the address shown in this Policy. The effective dates of such cancellation shall be not less than thirty (30) days (ten (10) days for non-payment of premium) following mailing of the notice of cancellation. The time of surrender or the effective date of cancellation stated in the notice shall become the end of the "policy period".

Delivery of such written notice either by the First "Named Insured" or by us shall be equivalent to mailing. If this Policy is issued to comply with any law or regulation that requires notice of cancellation to any governmental body, cancellation shall not be effective until the required notice has been provided by you or us.

If we cancel this Policy, unearned premium shall be computed pro rata; if the First "Named Insured" cancels, the unearned premium shall be the customary short rate proportion of the premium. In either event, the applicable unearned premium shall be returned to the First "Named Insured" as soon as practicable following the effective date of the cancellation. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of the effective date of the cancellation.

If we elect not to renew this Policy for an additional "policy period", we shall mail written notice to the First "Named Insured" at the address shown in the Declarations. Such written notice of non-renewal shall be mailed at least thirty (30) days prior to the end of the "policy period".

9. First "Named Insured" as Sole Representative

The First "Named Insured" shall act on behalf of all insureds with respect to completing the "application" for this insurance, including representing the truth and completeness of all information as required in SECTION V – CONDITIONS, 2. Duties in the Event of a "Claim" and SECTION V – CONDITIONS, 3. Notice of Potential "Claims", giving or receiving notice of cancellation or non-renewal, paying premium or receiving unearned premium, agreeing to any changes in this Policy, and electing whether or not to purchase the Supplemental Extended Reporting Period described in SECTION VI – EXTENDED REPORTING PERIODS.

10. Limited Consent to Settle

We have the right to negotiate the settlement of any "claims" as we deem expedient, whether within or above the Deductible, and we will seek your consent to any settlement.

If you refuse to consent to any settlement we recommend, you shall thereafter be obligated to negotiate or defend such "claim" independently of us. Subject to the Limits of Insurance, our liability for such "claim" is limited to the amount in excess of the Deductible which we would have contributed to the settlement had you consented to settlement at that time plus any expenses covered by the Policy incurred up to the date of your refusal to settle.

11. Change in Control; Mergers and Acquisitions

    a.  If, during the "policy period", any of the following events occur:

COL 01 0050

(1) The acquisition of any "Named Insured", or all or substantially all of its assets, by another entity or the merger or consolidation of any "Named Insured" into or with another entity such that the "Named Insured" is not the surviving entity;

(2)  The appointment of a receiver, conservator, trustee, liquidator or rehabilitator, or any similar official, for or with respect to any "Named Insured";

Coverage under this Policy will continue in full force and effect with respect to "legal services" rendered before such event, but coverage will cease with respect to "legal services" committed after such event.  After any such event, this Policy may not be canceled by the "Named Insured" and the entire premium for this Policy will be deemed fully earned.

b. If after the effective date of this Policy, the "Named Insured" merges or consolidates with another entity such that the "Named Insured" is the surviving entity or acquires another entity or substantially all of the assets of another entity, no coverage shall be afforded under this Policy for any "claim" involving the assets acquired or the entity which is consolidated or merged with or acquired unless the following conditions are met:

(1) The insured provides written notice of such merger, consolidation creation, or acquisition to us within thirty (30) days after the effective date of such merger, consolidation, creation or acquisition, or by the end of the "policy period", whichever is earliest;

(2) The insured provides us with such information as we may deem necessary;

(3) The insured accepts any special terms, conditions, exclusions or additional premium charge as may be required; and

(4) We, at our sole discretion, agree to provide such coverage.

12. Change in Membership of the Firm

The "Named Insured" shall report to us in writing within forty-five (45) days but before Policy expiration, whichever is earlier, any increase in new members, lawyers acting of counsel or as independent contractors, or others qualifying as insureds  under SECTION II – WHO IS AN INSURED and providing "legal services" if such increase exceeds 50% of the number of members, employees, lawyers acting of counsel or as independent contractors providing "legal services" on behalf of the "Named Insured" as of the effective date of this Policy.

As part of this reporting requirement, the "Named Insured" will provide any additional information we may require.   We reserve the right to charge an additional premium.

13. Fraudulent Acts

If any insured shall commit fraud in proffering any "claim", this insurance shall become void from the date such fraudulent "claim" is proffered.

14. Assignment of Interest Limitation

Assignment of interest under this policy shall not bind us unless we agree and endorse the assignment onto this policy.

**SECTION VI – EXTENDED REPORTING PERIODS**

In the event this Policy is cancelled or non-renewed by you or us, you may be entitled to the following extensions of coverage.

1.  Basic Extended Reporting Period

A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the "policy period" and lasts for thirty (30) days. This extension of coverage does not apply if other insurance insures the "claim" for "damages" arising out of "legal services."

2.  Supplemental Extended Reporting Period

A Supplemental Extended Reporting Period is available, but only by endorsement and for an extra premium charge.  Please refer to Item Number 9. in the Declarations of this Policy for premium options.

COL 01 0051

    a.  You must give us a written request for the endorsement and pay any premium due within thirty (30) days after the end of the "policy period."  The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

    b.  The Supplemental Extended Reporting Period starts when the Basic Extended Reporting period set forth in paragraph a. above ends.

    c.  All premiums paid for the Supplemental Extended Reporting Period shall be deemed fully earned and non-refundable as of the first day of the Supplemental Extended Reporting Period.

However, there shall be no entitlement to these extensions if cancellation or non-renewal is due to your:

    (1)  Non-payment of premium or Deductible due;

    (2)  Failure to comply with the terms and conditions of the Policy; or

    (3)  Misrepresentation or Fraud.

These extensions of coverage shall be subject to all the terms and conditions of this Policy and shall apply to "claims" first made against an insured and reported to us that result from "damages" that arise out of a "legal service" performed subsequent to the Policy effective date or Retroactive Date, if any, and before the end of the "policy period."

The fact that the period during which "claims" may be reported to us under this Policy is extended by virtue of the Basic and Supplemental Extended Reporting Periods does not in any way increase the Limits of Insurance of this Policy.

## SECTION VII – DEFINITIONS

Defined terms are in quotation marks throughout this Policy and may be used in either the singular or plural, as appropriate.

1.  "Application" means:

    a.  The "application", including any material submitted therewith, for this policy; and

    b.  The "application(s)", including any material submitted therewith, for all previous policies issued by us providing continuous coverage until the inception date of this Policy.

2.  "Claim" means a demand for monetary "damages" arising out of a "legal service" made against any insured by service of suit, the institution of arbitration or administrative proceedings or otherwise, but does not include a demand for equitable or non-pecuniary relief.

3.  "Damages" means judgments, awards and settlements an insured is legally obligated to pay as a result of a "claim" to which this policy applies.

4.  "Hazardous materials" means "pollutants", lead, asbestos, silica, mold, fungi or bacteria, or radon and materials containing them.

5.  "Legal services" means usual and customary services of a licensed lawyer in good standing acting by or on behalf of the "Named Insured" described in the Declarations of this Policy including the following services as:

    a.  a Notary Public;

    b.  an Arbitrator or Mediator;

    c.  an Administrator, Conservator, Receiver, Executor, Trustee, Guardian or while acting in a similar fiduciary capacity for clients of the "Named Insured";

    d.  a member of a formal accreditation board, ethics review or peer review board if asked to serve on behalf of the "Named Insured";

    e.  a member of a Bar Association.

"Legal services" also includes "personal injury" to which this insurance applies.

COL 01 0052

6.  "Named Insured" means the individual, corporation, partnership, limited liability company, limited partnership, or other entity named in Item 1. in the Declarations.

7.  "Personal injury" means injury arising out of one or more of the following offenses:

    a.  False arrest, detention or imprisonment;

    b.  Malicious prosecution;

    c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.  Oral or written publication, in any manner, of material that violates a person's right of privacy.

8.  "Policy period" means the period shown as such in the Declarations, unless earlier cancelled pursuant to Section V. 8. of this Policy.

9.  "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

10. "Predecessor firm" means an entity that was engaged in "legal services" to whose financial assets and liabilities the "Named Insured" is the majority successor in interest prior to the effective date of this policy.

COL 01 0053

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

PROFESSIONAL LIABILITY POLICY
LAWYERS PROFESSIONAL LIABILITY POLICY

**SECTION I – COVERAGES**, 2. Exclusions is amended by the addition of the following:

This Policy does not apply to any "claim" arising directly or indirectly out of any act, error or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, advertising, communicating or distribution of material or information.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

COL 01 0054

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PUNITIVE, EXEMPLARY OR MULTIPLE DAMAGES EXCLUSION

This endorsement modifies insurance provided under the following:

LAWYERS PROFESSIONAL LIABILITY

**SECTION I – COVERAGES**, 2. Exclusions is amended and the following added:

This insurance does not apply to any "claim" for or awards of:

1.  Punitive, exemplary or multiple damages; or

2.  Equitable or non-pecuniary relief;

including any fines, penalties, court imposed sanctions, return or restitution of legal fees, costs or other expenses associated with such awards.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

LPL029-1007                                                                    Page 1 of 1

COL 01 0055

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

LAWYERS PROFESSIONAL LIABILITY

A. **SECTION I – COVERAGES**, paragraph 2. Exclusions is amended and the following added:

This Policy does not apply to any "claim" based on or directly or indirectly arising out of or resulting from:

(1) "Certified acts of terrorism" or "other acts of terrorism", including any action taken in hindering or defending against an actual or expected incident of "certified acts of terrorism" or "other acts of terrorism"; or

(2) Any act of terrorism:

(a) that involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

(b) that is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

(c) in which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials;

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or "damage" in (1) or (2) above; including

(3) Damages arising out of or resulting, directly or indirectly, from (1) or (2) above that are awarded as punitive damages.

B. In the event of an act of terrorism, a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or "damage" that is otherwise excluded under this Coverage Part.

C. The following definitions are added to **SECTION VII – DEFINITIONS**:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The criteria contained in the  Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

COL 01 0056

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAR EXCLUSION

This endorsement modifies insurance provided under the following:

LAWYERS PROFESSIONAL LIABILITY

**SECTION I – COVERAGES**, paragraph 2. Exclusions is amended and the following added:

This Policy does not apply to any "claim" based on or directly or indirectly arising out of or resulting from:

War, including:

(a)  undeclared or civil war;

(b)  warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents;

(c)  insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

COL 01 0057

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MINIMUM POLICY PREMIUM

The following additional policy Conditions supersede any other policy conditions as regards the "minimum earned premium" for this policy:

**Minimum Earned Premium**

This policy is subject to a "minimum earned premium".  "Minimum earned premium" means the premium that is calculated as follows:

1.  The total policy premium as shown in the policy Declarations, plus

2.  Any premium adjustment by endorsements, plus

3.  Any additional premium developed by audit.

**Audits and Minimum Earned Premium**

Audits will not reduce the "minimum earned premium". The due date for audit premiums is the date shown as the due date on the bill.

**Cancellation and Minimum Earned Premium**

1.  If you cancel this policy, the return premium will be 90% of the pro rata balance of any remaining unearned premium but no less than 25% of the "minimum earned premium".

2.  If we cancel the policy for any reason, other than for non-payment of premium, the "minimum earned premium" shall not apply. We will return to you the pro rata amount of the unearned premium.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

COL 01 0058

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SECURITY INCIDENT RESPONSE COVERAGE

This endorsement modifies insurance provided under the following:

INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY POLICY
LAWYERS PROFESSIONAL LIABILITY POLICY

| SCHEDULE | |
|---|---|
| $  **500** | Per Security Incident Deductible |
| $  **10,000** | Security Incident Response Expenses Limit |
| $  **10,000** | Security Incident Response Expenses Aggregate Limit |

A.  **SECTION I – COVERAGES** is amended with the addition of the following:

We will reimburse you, in excess of the deductible indicated in the Schedule shown above, up to the limit indicated in the Schedule shown above, for "security incident response expenses" you incur resulting directly from a "security incident".

In order to be reimbursed by us under the coverage afforded by this endorsement, you must:

1.  incur the "security incident response expenses"; and

2.  report those expenses to us with supporting documentation;

after the Retroactive Date, if any, shown in the Declarations, and before the end of the "policy period".  No Extended Reporting Period applies to the coverage provided hereunder.

"Security incident response expenses" paid to you under this endorsement will reduce the limit of insurance stated in the Declarations as LIMITS OF INSURANCE - AGGREGATE.

B.  Solely as respects the coverage afforded by this endorsement, the following definitions are added:

1.  "Security incident" means any actual incident regarding your clients' personal information collected by you, held within your network or for which you are otherwise responsible for safeguarding.

2.  "Security incident response expenses" means those expenses you incur:

a.  to hire cyber forensic analysts to determine the extent of an actual security breach that has occurred; or

b.  to comply with state or local privacy laws requiring that notification is given to individuals when the security, confidentiality, or integrity of their personal information has been compromised.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

COL 01 0059

COL 01 0060

NJ SLA #  00000-11-00036

## LAWYERS PROFESSIONAL LIABILITY DECLARATIONS

**COLONY INSURANCE COMPANY**
**8720 STONY POINT PARKWAY**
**SUITE 300**
**RICHMOND, VA 23235**
**(800) 577-6614 (All Inquiries)**

**DATE ISSUED**
05/04/2011 JC2

In consideration of the premium, insurance under all sections of this policy is provided to the "named insured" only with respect to those coverages for which a limit of liability is shown, subject to all the terms of this policy including forms and endorsements made part thereof.

### THIS IS A CLAIMS MADE POLICY.  PLEASE READ IT CAREFULLY.
### RETROACTIVE DATE: 04/08/2011

INCEPTION:  12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN

**1.  NAME AND MAILING ADDRESS OF NAMED INSURED:**

    KWASNIK, KANOWITZ & ASSOCIATES, P.C.
    2050 SPRINGDALE RD., SUITE 200
    CHERRY HILL, NJ 08003

**2.  AGENCY NAME AND MAILING ADDRESS:**

    APOGEE INSURANCE GROUP, A DIV OF GATEWAY UW AGENCY, INC
    489 DEVON PARK DR., SUITE 301
    WAYNE, PA 19087

**3.  POLICY NUMBER:**    EO406308

**4.  POLICY PERIOD:**    04/08/2011  TO  04/08/2012

**5.  COVERED PROFESSIONAL SERVICES:**  THE PRACTICE OF LAW

**6.  LIMIT OF INSURANCE:**

    a.    $1,000,000.00    Each Claim
    b.    $1,000,000.00    Aggregate

**7.  DEDUCTIBLE:**

    a.    $10,000.00    Per Claim Deductible
    b.    N/A    Aggregate Deductible

**8.  PREMIUM:**

    Flat Premium:  $11,275.00
    Fees:  $0.00

**9.  OPTIONAL SUPPLEMENTAL EXTENDED REPORTING PERIOD:**

    One Year:    100    % of the annual premium shown in Item 8.
    Three Years:    175    % of the annual premium shown in Item 8.
    Five Years:    250    % of the annual premium shown in Item 8.

    Restrictions apply.  See Section VI of the policy for details.  Must be requested in writing and premium paid within thirty (30) days of expiration or termination.

**10. FORMS AND ENDORSEMENTS ATTACHED AT INCEPTION:**

| | | | | |
|---|---|---|---|---|
| AP081-0909 | LPL0001-0907 | LPL029-1007 | LPL041B-0108 | LPL045-1007 |
| PRIVACYNOTICE-0408 | U002-0904 | U094-0702 | U577-0908 | ZPJCG-0810 |

_____
Signature of Authorized Representative

LPLDEC (01/08)    This Declarations Page and the Forms and Endorsements listed above and attached hereto    Page 1 of 1
complete the above numbered Policy.

COL 01 0061

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MINIMUM POLICY PREMIUM

The following additional policy Conditions supersede any other policy conditions as regards the "minimum earned premium" for this policy:

**Minimum Earned Premium**

This policy is subject to a "minimum earned premium".  "Minimum earned premium" means the premium that is calculated as follows:

1.   The total policy premium as shown in the policy Declarations, plus

2.   Any premium adjustment by endorsements, plus

3.   Any additional premium developed by audit.

**Audits and Minimum Earned Premium**

Audits will not reduce the "minimum earned premium". The due date for audit premiums is the date shown as the due date on the bill.

**Cancellation and Minimum Earned Premium**

1.   If you cancel this policy, the return premium will be 90% of the pro rata balance of any remaining unearned premium but no less than 25% of the "minimum earned premium".

2.   If we cancel the policy for any reason, other than for non-payment of premium, the "minimum earned premium" shall not apply. We will return to you the pro rata amount of the unearned premium.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U002-0904                                                                                                  Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SECURITY INCIDENT RESPONSE COVERAGE

This endorsement modifies insurance provided under the following:

INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY POLICY
LAWYERS PROFESSIONAL LIABILITY POLICY

| SCHEDULE | | |
|---|---|---|
| $ | 500 | Per Security Incident Deductible |
| $ | 10,000 | Security Incident Response Expenses Limit |
| $ | 10,000 | Security Incident Response Expenses Aggregate Limit |

A.  **SECTION I – COVERAGES** is amended with the addition of the following:

We will reimburse you, in excess of the deductible indicated in the Schedule shown above, up to the limit indicated in the Schedule shown above, for "security incident response expenses" you incur resulting directly from a "security incident".

In order to be reimbursed by us under the coverage afforded by this endorsement, you must:

1.  incur the "security incident response expenses"; and

2.  report those expenses to us with supporting documentation;

after the Retroactive Date, if any, shown in the Declarations, and before the end of the "policy period".  No Extended Reporting Period applies to the coverage provided hereunder.

"Security incident response expenses" paid to you under this endorsement will reduce the limit of insurance stated in the Declarations as LIMITS OF INSURANCE - AGGREGATE.

B.  Solely as respects the coverage afforded by this endorsement, the following definitions are added:

1.  "Security incident" means any actual incident regarding your clients' personal information collected by you, held within your network or for which you are otherwise responsible for safeguarding.

2.  "Security incident response expenses" means those expenses you incur:

a.  to hire cyber forensic analysts to determine the extent of an actual security breach that has occurred; or

b.  to comply with state or local privacy laws requiring that notification is given to individuals when the security, confidentiality, or integrity of their personal information has been compromised.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

COL 01 0063

# EXHIBIT C

to Declaration of Robert F. Walsh in Support of
Colony Insurance Company's Motion for
Summary Judgment/Motion to Enter Default
Judgment

2050 Springdale Road - Suite 200
Cherry Hill, NJ 0800 :
Telephone: 856 489- l444
Fax: 856 489-5004
Web: WWW.Libertys ate.com

**Liberty State
Insurance Services**

# Fax

*Where is my quote*

To: Michael Cavanaugh

From: Bill Kwasnik

Fax: 610-337-2337

Pages: 3

Phone:

Date: 12/16/10   1/10/10

Re:

cc:

☑ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

• **Comments:** Kwasnik Kantowtz  SYS-9990914

① Real Estate Supplement

② Plaintiff Supplement

Please note, this law firm specializes in estate formation, wills, and estate planning. Only one lawyer of the group does any any real estate closing.

Need quote ASAP

Thanks

Bill Ku

**DEPOSITION
EXHIBIT
P-13
RC 11-26-12**

COL 01 0092



ARGO PRO
*Member Argo Group*

## LAW FIRMS
### ERRORS & OMISSIONS APPLICATION

**APPLICANT'S INFORMATION:**

| | |
|---|---|
| LEGAL NAME OF FIRM: | Kwasnik, Kanbowitz Law firm |
| BUSINESS ADDRESS: | RTE-70 East Cherry Hill, N.J 0800 |
| COUNTY: | WEB ADDRESS: |
| DATE FIRM ESTABLISHED: | 1999 |
| DATE PRESENT OWNERSHIP ASSUMED CONTROL: | |

☐ Corporation   ☐ Individual   ☒ Partnership   ☐ PA/PC   ☐ Franchise

**Insurance History:**

1. Current Insurer _____   Deductible $ 5000/10,000
   Expiration Date _____   Expiring Premium $ _____
   Is Current Carrier willing to Renew? ☐ No ☐ Yes
   Retroactive Date (Prior Acts)_____   **If requesting prior acts coverage you must provide a copy of your current insurance declaration page and complete the Prior Acts Coverage Supplement Application.**

2. Requested Limits:
   ☐ $100,000/$300,000   ☐ $500,000/$500,000
   ☐ $300,000/$600,000   ☐ $1,000,000/$1,000,000
   ☐Other $ 1 m    /$ 3 m
   Requested Deductible (Per Claim): ☐$2,500   ☒$5,000   ☒$10,000   ☐Other_____
   or

3. A. Complete the following for all lawyers in the Firm, independent contractor lawyers and "Of Counsel" lawyers:

| Lawyer Name | CLE Hours Past Year | D/C* | Date Admitted to Bar (Mo-Yr) | Years in Private Practice | Lawyer's Primary Area of Practice |
|---|---|---|---|---|---|
| 1. Michael Kwasnik | 20 | P | 1990 | 12 | Estate Planing |
| 2. Howard Carberry | 30 | P | 1980 | 21 | General Practice |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |
| 11. | | | | | |
| 12. | | | | | |
| 13. | | | | | |
| 14. | | | | | |
| 15. | | | | | |

\* Designation Code

**O** Officers, Directors or Shareholders of the Corp. who are licensed as Lawyers   **E** Employed Lawyers
**S** Sole Proprietor   **C** "Of Counsel" Lawyers   **P** Partners of Partnership   **I** Indep. Contractor Lawyers

COL 01 0093

B. Are "Of Counsel" carrying their own E&O?               *N/A* ☐ No ☐ Yes

C. Give the number of employees and/or support staff utilized:

| Law Clerks | Investigators | Abstractors | Title Agents | Accountants | Certified Paralegals | Clerical/ Secretarial |
|---|---|---|---|---|---|---|
| 1 | ~ | | | 1 | | 4 |

D. Please attach the following:
☐ Copy of firm letterhead
☐ Copy of five (5) years hard copy loss runs ~*No loss*
☐ Copy of current declaration page (if requesting prior acts coverage)

4. Does any lawyer listed above practice in this Firm less than 40 hours per week?  ☒ No ☐ Yes
   **If "Yes" to which attorney(s) does this apply?**_____No. of Hours_____

5. Total gross billings: a. Latest Fiscal Year: $ *1,000,000*
                         b. Projected Next Fiscal Year: $ *1,000,000*

6. Please indicate types of Docket Control Systems currently used:
   ☐ Single Calendar  ☐ Dual Calendar  ☒ Computer  ☐ Master listing  ☐ Tickler cards  ☐ Other

7. a. How many individuals in firm are involved in Monitoring Deadlines? *2*

   b. How frequently are deadlines checked? ☐ Daily ☒ Weekly ☐ Monthly ☐ Other

   c. Does someone other than the attorney handling the case have primary responsibility for maintaining the docket calendar?   ☐ No ☒ Yes

8. Is it the firm's standard practice to use engagement letters when agreeing to represent a claim? If "No," please provide an explanation:_____   ☐ No ☒ Yes
   _____

9. Is it the firm's standard practice to use non-engagement letters when refusing to represent a client? If "No," please provide an explanation:_____   ☐ No ☒ Yes
   _____

10. Is any lawyer or employee listed above licensed or operating as any of the following: (% of Total Time Spent)  *No*
    Accountant ___*0*___ %       Escrow Agent ___*0*___ %       Insurance Agent/Broker ___*0*___ %
    Mortgage Broker/Lender ___*0*___ % Real Estate Agent/Broker ___*0*___ % Title Abstractor/Searcher ___*0*___ %
    Title Agent ___*0*___ %
    Do you understand that your insurance coverage does not cover acts related to these operations unless specifically endorsed?   ☐ No ☐ Yes

11. a. How does the firm maintain its conflict of interest avoidance system? (check all applicable)
    ___*X*___ Computer    ____ Index File    ____ Conflict Committee    ____ Other–please describe:_____
    _____

    b. How often is the conflict of interest system updated?
    ___ Daily   ___*✓*___ Weekly   _____ Monthly   _____ Other (describe) _____

    c. Does the conflict of interest system disclose attorney–client relationships established by newly hired lawyers, partners, predecessor, merged or acquired firms?   ☐ No ☒ Yes

    d. If any lawyer of the firm becomes aware of a conflict of interest, do they disclose it in writing to all parties involved and all partners?   ☐ No ☒ Yes
    If "No," please explain: _____

COL 01 0094

12. What percentage of time-not income do you spend in the following areas of practice?

**Total of A+B+C+D must equal 100%**

**A.**

| | |
|---|---|
| ____ % | Admiralty—Defense |
| ____ % | Bankruptcy |
| ____ % | Collections |
| ____ % | Criminal matters |
| ____ % | Defense of personal or bodily injury |
| ____ % | Defense of workers' compensation |
| ____ % | Immigration |
| ____ % | International Law |
| ____ % | Mediation |
| ____ % | Will, estate planning, probate |
| ____ % | Family Law |
| ____ % | **Subtotal (A)** |

**B.**

| | |
|---|---|
| ____ % | Admiralty other than Defense |
| ____ % | Corporation formation/alteration (Non-SEC Related) |
| ____ % | Environmental |
| ____ % | ERISA or Employee Benefits |
| ____ % | Investment Counseling/Money Mgt. (Complete Financial Planning Supplement) |
| ____ % | Labor—Employee relations |
| ____ % | Labor management representation |
| ____ % | Taxation-individual |
| ____ % | Utilities/Municipality |
| ____ % | Mergers/Acquisitions |
| ____ % | **Subtotal (B)** |

**C.**

| | |
|---|---|
| ____ % | Entertainment, sports or celebrity |
| ____ % | Oil, gas, or mining |
| ____ % | Patent, copyright or trademark (PCT) |
| ____ % | Plaintiff's rep. in personal or bodily injury |
| ____ % | Plaintiff's representation in products liability |
| ____ % | Plaintiff's representation in workers' comp. |
| ____ % | Real Estate - Commercial |
| ____ % | Real Estate - Residential |
| ____ % | Title/Abstracting |
| ____ % | Domestic Law |
| ____ % | Taxation -- Corporate |
| ____ % | **Subtotal (C)** |

Complete attached supplemental application for any plaintiff's or PCT work.

**D.**

| | |
|---|---|
| ____ % | Banking, savings & loan, or other financial institution services |
| ____ % | Bonds, commercial paper, limited partnerships, or State/Federal securities, both exempt & non-exempt (Complete Securities Supp.) |
| ____ % | Real Estate Development and/or Syndication/Limited Partnership |
| ____ % | Securities/SEC (Complete Securities Supp.) |
| ____ % | Other(Describe in detail by attachment) |
| ____ % | **Subtotal (D)** |

13.   a. After inquiry with each person as appropriate, in the last seven (7) years, has any professional liability claim or suit ever been made against the Firm or any predecessor firm or any current or former member of the Firm or predecessor firm?   ☐ No ☐ Yes
**If "Yes," how many? _____ Please attach copies of currently valued Loss Runs from prior carriers. If "Yes," complete a separate Supplemental Claim Form for each claim or suit.**

b. After inquiry with each person as appropriate, do you know of any circumstances, acts, errors or omissions that could result in a Professional Liability claim?   ☐ No ☐ Yes

c. After inquiry with each person as appropriate, has an attorney for who coverage is sought ever been refused admission to practice, been disbarred, suspended, reprimanded, sanctioned, or held in contempt by any court, administrative agency or regulatory body or been subject of a disciplinary complaint made to any of the aforementioned entities?   ☐ No ☐ Yes
**If "Yes," please provide a copy of the complaint made to the bar and a copy of their decision.**

* Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, may be committing a fraudulent insurance act, and may be subject to a civil penalty or fine.
* not applicable in all states

_____          _____          _____          _____
Applicants Signature                          Date                 Producer                 Title

COL 01 0095

12. What percentage of time-not income do you spend in the following areas of practice?
**Total of A+B+C+D must equal 100%**

**A.**

| | | |
|---|---|---|
| 0 % | Admiralty—Defense |
| 5 % | Bankruptcy |
| 10 % | Collections |
| 0 % | Criminal matters |
| 0 % | Defense of personal or bodily injury |
| 0 % | Defense of workers' compensation |
| 0 % | Immigration |
| 0 % | International Law |
| 0 % | Mediation |
| 20 % | Will, estate planning, probate |
| 10 % | Family Law |
| **60 %** | **Subtotal (A)** |

**C.**

| | | |
|---|---|---|
| 0 % | Entertainment, sports or celebrity |
| 0 % | Oil, gas, or mining |
| 0 % | Patent, copyright or trademark (PCT) |
| 10 % | Plaintiff's rep. in personal or bodily injury |
| 0 % | Plaintiff's representation in products liability |
| 00 % | Plaintiff's representation in workers' comp. |
| 10 % | Real Estate - Commercial |
| 10 % | Real Estate - Residential |
| 0 % | Title/Abstracting |
| 10 % | Domestic Law |
| 0 % | Taxation -- Corporate |
| **40 %** | **Subtotal (C)** |

Complete attached supplemental application for any plaintiff's or PCT work.

**B.**

| | |
|---|---|
| 0 % | Admiralty other than Defense |
| 0 % | Corporation formation/alteration (Non-SEC Related) |
| 0 % | Environmental |
| 0 % | ERISA or Employee Benefits |
| 0 % | Investment Counseling/Money Mgt. (Complete Financial Planning Supplement) |
| 0 % | Labor—Employee relations |
| 0 % | Labor management representation |
| 10 % | Taxation-individual |
| 0 % | Utilities/Municipality |
| 0 % | Mergers/Acquisitions |
| **10 %** | **Subtotal (B)** |

**D.**

| | |
|---|---|
| 0 % | Banking, savings & loan, or other financial institution Services |
| 0 % | Bonds, commercial paper, limited partnerships, or State/Federal securities, both exempt & non-exempt (Complete Securities Supp.) |
| 0 % | Real Estate Development and/or Syndication/Limited Partnership |
| 0 % | Securities/SEC (Complete Securities Supp.) |
| 0 % | Other(Describe in detail by attachment) |
| 0 % | **Subtotal (D)** |

13.   a. After inquiry with each person as appropriate, in the last seven (7) years, has any professional liability claim or suit ever been made against the Firm or any predecessor firm or any current or former member of the Firm or predecessor firm?   ☒ No   ☐ Yes
**If "Yes," how many? _____ Please attach copies of currently valued Loss Runs from prior carriers. If "Yes," complete a separate Supplemental Claim Form for each claim or suit.**

b. After inquiry with each person as appropriate, do you know of any circumstances, acts, errors or omissions that could result in a Professional Liability claim?   ☒ No   ☐ Yes

c. After inquiry with each person as appropriate, has an attorney for who coverage is sought ever been refused admission to practice, been disbarred, suspended, reprimanded, sanctioned, or held in contempt by any court, administrative agency or regulatory body or been subject of a disciplinary complaint made to any of the aforementioned entities?   ☒ No   ☐ Yes
**If "Yes," please provide a copy of the complaint made to the bar and a copy of their decision.**

\* Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, may be committing a fraudulent insurance act, and may be subject to a civil penalty or fine.
\* not applicable in all states

| _____ | _____ | _____ | _____ |
|---|---|---|---|
| Applicants Signature | 2/10/11 | William *signature* | Producer |
| | Date | Producer | Title |

COL 01 0096

N/A

**⌁ Colony**
MEMBER ARGONAUT GROUP

**LAW FIRMS**
## ERRORS & OMISSIONS SUPPLEMENTAL CLAIM APPLICATION

**INSTRUCTIONS:**
1. This form is to be completed when the Applicant has been involved in any claim or is aware of an incident which may give rise to a claim. COMPLETE ONE FORM FOR EACH CLAIM OR INCIDENT.
2. If space is insufficient to answer any questions fully, attach a separate sheet.
3. In lieu of attaching suit papers, please provide a complete narrative description of the litigations and facts involved.

1. Full name of Applicant: _____

2. Full name of Individual(s) or firm involved in the claim: _____

3. Full name of Claimant: _____

4. Indicate whether:   ☐CLAIM   ☐SUIT   ☐ACT, ERROR OR OMISSION ONLY (No Claim or Suit)
   **(If suit was filed please provide copy of suit papers)**

5. Date and location of alleged act, error or omission: _____

6. Date of Claim: _____ Date reported to Insurance Company: _____

7. Additional defendants _____

8. If closed:   A. Total loss paid including deductible(s)? $_____ Date closed: _____
   B. Indicate whether: ☐COURT JUDGEMENT   (or)   ☐OUT OF COURT SETTLEMENT

9. If pending:   A. Claimant's settlement demand?      $_____
   B. Defendant's offer for settlement?    $_____
   C. Insurer's loss reserve?              $_____

10. Name(s) of Insurer(s) responding to this claim or incident. _____
    a. Policy Number: _____
    b. Limits of Liability: _____ Deductible: _____

11. Provide complete narrative description of suit claim or incident: _____
    _____
    _____

A. Description of alleged act, error or omission upon which claim is based: _____
   _____

B. Description of the type and extent of injury or damage allegedly sustained: _____
   _____

C. Explain what action(s) have been taken to prevent reoccurrence of a similar claim: _____
   _____

D. Was Engagement Letter used?                          ☐ No ☐ Yes

**I declare that the information submitted herein is true to the best of my knowledge and becomes a part of my Professional Liability Application. I understand that an incorrect or incomplete statement could void my protection.**

_____          _____
Signature of Applicant/Title/Date          (Must be signed by a Principal, Partner or Officer of the Firm.)

E&O-LAW-APP                    Page 4 of 6                        7-04

COL 01 0097



**LAW FIRMS**
## ERRORS & OMISSIONS SUPPLEMENTAL CLAIM APPLICATION

**INSTRUCTIONS:**

1. This form is to be completed when the Applicant has been involved in any claim or is aware of an incident which may give rise to a claim. COMPLETE ONE FORM FOR EACH CLAIM OR INCIDENT.
2. If space is insufficient to answer any questions fully, attach a separate sheet.
3. In lieu of attaching suit papers, please provide a complete narrative description of the litigations and facts involved.

1. Full name of Applicant: _____

2. Full name of Individual(s) or firm involved in the claim:_____

3. Full name of Claimant: _____

4. Indicate whether:    ☐CLAIM    ☐SUIT   ☐ACT, ERROR OR OMISSION ONLY (No Claim or Suit)
   **(If suit was filed please provide copy of suit papers)**

5. Date and location of alleged act, error or omission: _____

6. Date of claim:_____ Date reported to Insurance Company: _____

7. Additional defendants _____

8. If closed:   A. Total loss paid including deductible(s)? $_____ Date closed:_____
   B. Indicate whether: ☐COURT JUDGEMENT    (or)    ☐OUT OF COURT SETTLEMENT

9. If pending: A. Claimant's settlement demand?          $ _____
   B. Defendant's offer for settlement?      $ _____
   C. Insurer's loss reserve?                $ _____

10. Name(s) of Insurer(s) responding to this claim or incident._____
    a. Policy Number: _____
    b. Limits of Liability: _____ Deductible: _____

11. Provide complete narrative description of suit claim or incident: _____
    _____
    _____

A. Description of alleged act, error or omission upon which claim is based:_____
   _____
   _____

B. Description of the type and extent of injury or damage allegedly sustained:_____
   _____
   _____

C. Explain what action(s) have been taken to prevent reoccurrence of a similar claim: _____
   _____

D. Was Engagement Letter used?                              ☐ No ☐ Yes

**I declare that the information submitted herein is true to the best of my knowledge and becomes a part of my Professional Liability Application. I understand that an incorrect or incomplete statement could void my protection.**

_____          _____
Signature of Applicant/Title/Date          (Must be signed by a Principal, Partner or Officer of the Firm.)

E&O-LAW-AP                    Page 4 of 6                          7-04

COL 01 0098



Colony.
MEMBER ARGONAUT GROUP

**PLAINTIFF LITIGATION**
**ERRORS & OMISSIONS  SUPPLEMENTAL APPLICATION**

**PLEASE COMPLETE THE FOLLOWING ONLY IF ACTING AS PLAINTIFF'S REPRESENTATIVE AS NOTED ON THE SUPPLEMENTAL APPLICATION.**

1. Describe the types of cases handled with percentages for each, to total 100%:

| | | | |
|---|---|---|---|
| Auto Related | _____ % | Medical Malpractice | _____ % |
| Admiralty | _____ % | Products Related Injury | _____ % |
| Aviation | _____ % | Toxic Tort | _____ % |
| Asbestos | _____ % | Sexual Harassment | _____ % |
| Body Injury | _____ % | Tobacco | _____ % |
| (non-medical malpractice) | | Veterans Issues | _____ % |
| Breast Implant | _____ % | Workers Compensation | _____ % |
| Discrimination | _____ % | Wrongful Death | _____ % |
| General Liability | _____ % | Other (describe): _____ | |

2. What is the Firm's average litigation case load per year?  _40_

3. What percentage of the Firm's litigation cases are settled before trial? ~~3~~  95% %

4. What percentage of the Firm's litigation cases are tried to a verdict? ≤ 5% %

5. What percentage of the Firm's litigation cases are handled on a contingency fee basis? _O_ %

6. What is the estimated average dollar size of judgments, awards and settlements $ _200,000_ in the litigation cases handled by the Firm?

7. What is the largest judgment, award or settlement in a litigation case achieved $ _480,000_ by the Firm in the past five years?

8. Does the firm take litigation case referrals from other law firms? ☒ No ☐ Yes
   **If "YES" please indicate the approximate number of cases and the types involved:**
   _____

9. Does the firm refer cases to other law firms? ☐ No ☒ Yes
   **If "YES" please indicate the approximate number of cases and the type involved:**
   _5  (Auto, and civil cases against gov't agencies_
   _Employee suits (Auto) Major injury suits_

10. Has the firm been involved in any class action plaintiff cases within the past five years? ☒ No ☐ Yes
    **If "Yes, please complete a Colony Class Action/Mass Tort supplemental application.**
    _____

I/We agree and understand this supplement becomes part of the application which forms a part of the policy.
This information is true and correct to the best of my/our knowledge.

_____
Signature of Applicant/Title/Date          (Must be signed by a Principal, Partner or Officer of the Firm.)

COL 01 0099



## PLAINTIFF LITIGATION
## ERRORS & OMISSIONS SUPPLEMENTAL APPLICATION

**PLEASE COMPLETE THE FOLLOWING ONLY IF ACTING AS PLAINTIFF'S REPRESENTATIVE AS NOTED ON THE SUPPLEMENTAL APPLICATION.**

1. Describe the types of cases handled with percentages for each, to total 100%:

| | | | |
|---|---|---|---|
| Auto Related | _____% | Medical Malpractice | _____% |
| Admiralty | _____% | Products Related Injury | _____% |
| Aviation | _____% | Toxic Tort | _____% |
| Asbestos | _____% | Sexual Harassment | _____% |
| Bodily Injury | _____% | Tobacco | _____% |
| (non-medical malpractice) | | Veterans Issues | _____% |
| Breast Implant | _____% | Workers Compensation | _____% |
| Discrimination | _____% | Wrongful Death | _____% |
| General Liability | _____% | Other (describe): _____ | |

2. What is the Firm's average litigation case load per year? _____

3. What percentage of the Firm's litigation cases are settled before trial? _____%

4. What percentage of the Firm's litigation cases are tried to a verdict? _____%

5. What percentage of the Firm's litigation cases are handled on a contingency fee basis? _____%

6. What is the estimated average dollar size of judgments, awards and settlements $_____
   in the litigation cases handled by the Firm?

7. What is the largest judgment, award or settlement in a litigation case achieved $_____
   by the Firm in the past five years?

8. Does the firm take litigation case referrals from other law firms?  ☐ No ☐ Yes
   **If "YES" please indicate the approximate number of cases and the types involved:**

   _____

9. Does the firm refer cases to other law firms?  ☐ No ☐ Yes
   **If "YES" please indicate the approximate number of cases and the type involved:**

   _____
   _____

10. Has the firm been involved in any class action plaintiff cases within the past five years?  ☐ No ☐ Yes
    **If "Yes," please complete a Colony Class Action/Mass Tort supplemental application.**

    _____
    _____

I/We agree and understand this supplement becomes part of the application which forms a part of the policy. This information is true and correct to the best of my/our knowledge.

_____     _____
Signature of Applicant/Title/Date          (Must be signed by a Principal, Partner or Officer of the Firm.)

COL 01 0100