# EXHIBIT F

to Declaration of Robert F. Walsh in Support of Colony Insurance Company's Motion for Summary Judgment/Motion to Enter Default Judgment

SUPERIOR COURT
CAMDEN COUNTY

**FILED**

MAR - 3 2010

Patricia Egan Jones
Surrogate/Deputy Clerk

**DILWORTH PAXSON LLP**
LibertyView, Suite 700
457 Haddonfield Road
Cherry Hill, NJ 08002
(856) 675-1900
(856) 675-8833 (fax)
Attorneys for Plaintiff, Katherine W. Labricciosa

KATHERINE W. LABRICCIOSA

        Plaintiff,

v.

MICHAEL KWASNIK, ESQUIRE;
KWASNIK, RODIO, KANTOWITZ,
& BUCKLEY, P.C.; ABC COMPANIES
1-99 and JOHN DOE INDIVIDUALS 1-
99

        Defendants.

Docket No. CAM-P - 0044-2010

CIVIL ACTION

**VERIFIED COMPLAINT TO
COMPEL ACCOUNTINGS, REMOVE
PURPORTED TRUSTEE OF INTER
VIVOS TRUST, FOR
TEMPORARY RESTRAINTS AND FOR
OTHER RELIEF**

    Plaintiff Katherine W. Labricciosa, by way of Verified Complaint against Defendants

Michael Kwasnik, Esquire, Kwasnik, Rodio, Kantowitz & Buckley, P.C., John Doe Individuals

1-99 and ABC Companies 1-99, states:

**PARTIES**

    1.    Plaintiff Katherine W. Labricciosa ("**Katherine**") is an adult individual residing

at 1503 West Chapel Avenue, Cherry Hill, New Jersey 08034.  Katherine is a 94 years old

widow.

    2.    Defendant Michael Kwasnik, Esquire ("**Kwasnik**") is an adult individual and is,

upon information and belief, a New Jersey-licensed attorney.

202649_1

COL 08 0030

3.      Defendant Kwasnik, Rodio, Kantowitz & Buckley, P.C. ("KRKB") is, upon information and belief, a New Jersey professional corporation with its principal place of business at 1763 Route 70 East, 2nd Floor, Cherry Hill, New Jersey 08002.

4.      KRKB is a law firm and Kwasnik is, upon information and belief, the firm's managing partner.

5.      Defendants, John Does 1-99, are individuals, the identity of whom are not yet known, that contributed to plaintiff's damages and are liable for the claims set forth herein.

6.      Defendants, ABC Companies 1-99, are entities, the identity of which are not yet known, that contributed to plaintiff's damages and are liable for the claims set forth herein.

## BACKGROUND

### The Red Eagle Tavern

7.      On March 26, 1950, Katherine and her now deceased husband, Anthony Labricciosa, formed the Red Eagle Company, a New Jersey corporation.

8.      Katherine is and has at all relevant times been the President of the Red Eagle Company.

9.      In or around 1950, Red Eagle Company purchased certain real property located at Block 129.01, Lot 1 in Cherry Hill Township, which is commonly known as 1503 West Chapel Avenue, Cherry Hill, New Jersey.  From 1950 through present, Katherine and her husband operated and managed a tavern on this property known as the Red Eagle Tavern (the "Tavern"). In addition, Katherine's personal residence, in which she has lived since 1969, is also located on the property and is appurtenant to the Tavern (The real property, Katherine's residence and the Tavern shall, at times, collectively be referred to herein as the "Property").

2

COL 08 0031

10.     Red Eagle Company owns a Cherry Hill Liquor License, License Number 0409-33-037-001 (the "Liquor License"), which permits the sale of alcoholic beverages at the Tavern.

11.     When the Red Eagle Company purchased the Property in 1950, it executed a mortgage in favor of the sellers in the amount of $38,000. The Red Eagle Company paid off the mortgage on the Property in or around 1957 and has owned the Property free and clear of all mortgages, liens or other encumbrances ever since.

12.     An August 31, 2005 appraisal listed the value of the Property at $2,290,000 and the value of the Liquor License at $700,000.

13.     Upon information and belief, the current market value for a Cherry Hill Liquor License is in excess of $1.5 Million Dollars.

14.     In addition to the Property and the Tavern, Red Eagle Company also owned seven residential-zoned lots directly behind the Tavern (the "Red Eagle Lots"). The Red Eagle Lots are located at Block 129.01, Lots 9, 10, 16, 17, 18, 19 and 20.

**Formation of the Labricciosa Trust**

15.     In or around November 2001, Katherine's husband, Anthony Labricciosa, died intestate and, several months later, Katherine retained Kwasnik, a Cherry Hill-based attorney, to assist in administrating Mr. Labricciosa's estate (the "Labricciosa Estate").

16.     Katherine was referred to Kwasnik by a friend who had heard Kwasnik appear on a local radio program.

17.     Katherine was the sole beneficiary of the Labricciosa Estate.

18.     In conjunction with the administration of the Labricciosa Estate, Kwasnik also prepared certain estate planning documents for Katherine, including a will, durable general power of attorney and health care proxy.

3

COL 08 0032

19.    In addition, Kwasnik recommended to Katherine that she form an inter vivos irrevocable family trust (the "**Trust**") in order to "protect" her assets and obtain significant tax savings and/or benefits.

20.    Katherine, unfamiliar with the intricacies of estate planning, trusted Kwasnik and agreed to the formation of the Trust.

21.    Kwasnik also persuaded Katherine to allow Kwasnik and/or his firm to be the trustee of the Trust, assuring her that she was still the beneficiary and that "the Trust is like a bowl and you have the only spoon to it."

22.    Kwasnik had Katherine sign certain documents in conjunction with the formation of the Trust, including a trust agreement dated November 7, 2002 (the "**Trust Agreement**"). However, Kwasnik never gave Katherine a copy of the Trust Agreement until February 23, 2010, when she demanded that he provide her with a copy.   A true and correct copy of the Trust Agreement that Kwasnik recently provided is attached hereto as Exhibit "A."

23.    Even though a professional corporation is not permitted to act as the trustee of a New Jersey trust, the Trust Agreement identifies KRKB as the trustee (the "**Trustee**") of the Trust.

24.    Katherine is the Donor of the Trust and the Trust beneficiaries are Katherine and those "beneficiaries listed in Donor's Last Will and Testament."

25.    According to the Trust's Application for Employer Identification Number, the stated purpose of the Trust is "Asset Protection.  Preservation of Personal Assets."

26.    Kwasnik persuaded Katherine to deposit all assets of and proceeds from the Labricciosa Estate, which included stock in Bell South, Comcast, AT&T, Verizon, and all other assets owned or controlled by Katherine, into the Trust.

4

COL 08 0033

27.   Although Katherine complied with Kwasnik's recommendation to deposit most if not all of her personal assets into the Trust, the only apparent benefit the Trust Agreement permits Katherine to receive maintenance of, and the ability to live in, her residence.

28.   Section 7 of the Trust Agreement provides:

> **Duties of Trustee to Maintain Donor's Residence.** The Trustee shall pay from income and if needed from principal all the expenses of maintaining Donor's residential real estate as the principal residence of Donor, for as long as Donor elects to use the premises as her principal residence. The expenses of assessments, insurance, ordinary repairs, snow removal, grass cutting, garden maintenance, and all expenses other than payment of utilities. Donor shall possess a life estate in her personal residence for the entirety of her life, and the Trustee shall act in good faith to preserve such life estate for Donor's sole use and enjoyment.

29.   Despite Kwasnik's representation to Katherine that she "would have the only spoon to the Trust," the Trust Agreement does not contain any other provisions allowing Katherine to control and/or withdraw funds and assets for her own benefit.

30.   Despite Kwasnik's representations to the contrary, the Trust has not and will not result in any significant tax savings and/or other tax benefits to Katherine, nor any asset protection benefit.

**Kwasnik's Actions Against Katherine's Interests**

31.   Almost immediately upon gaining control of Katherine's assets by forming the Trust and listing his firm as Trustee, Kwasnik began to manipulate the Trust and its assets for his personal benefit and that of his family members.

32.   In or around July 5, 2005, Kwasnik formed Chapel Avenue Management LLC, a New Jersey Limited Liability Company ("CAM LLC"). *See* New Jersey Business Entity Status Report relating to CAM LLC, a true and correct copy of which is attached hereto as Exhibit "B."

5

COL 08 0034



33.    Kwasnik structured CAM LLC so that the Trust is its sole member and even though KRKB is designated as the Trustee of the Trust, Kwasnik individually signed all documents and controlled all accounts of the Trust.

34.    Kwasnik never advised Katherine that he had formed CAM LLC and that the Trust was the sole member of CAM LLC.

35.    In addition to the formation of CAM LLC, Kwasnik, upon information and belief, also formed an entity called CW Development LLC ("CW LLC").

36.    Kwasnik also structured CW LLC so that the Trust is its sole member and even though KRKB is designated as the Trustee of the Trust, Kwasnik individually signed all documents and controlled all accounts of the Trust.

37.    Kwasnik never advised Katherine that he had formed CW LLC and that the Trust was the sole member of CW LLC.

**Unauthorized Transfer of the Property to CAM LLC**

38.    By deed dated July 7, 2005, and only two days after forming CAM LLC, Kwasnik transferred ownership of the Property from Red Eagle Company to CAM LLC for $1.00 (the "July 7, 2005 Deed"). A true and correct copy of the July 7, 2005 Deed is attached hereto as Exhibit "C."

39.    The July 7, 2005 Deed was prepared by Timothy J. Buckley, Esq., who is, upon information and belief, an attorney at KRKB.

40.    Although the July 7, 2005 Deed appears to bear Katherine's signature, Kwasnik would sometimes appear at the Tavern unannounced and present Katherine with detached signature pages from legal documents and direct her to sign them. When Katherine asked what she was signing, Kwasnik responded by stating that they were merely "legal formalities" and that

6

COL 08 0035

she need not worry about them. Katherine, who at the time was 90 years old and unfamiliar with legal matters, trusted her attorney and signed as directed.

41. After Katherine signed the signature page of the July 7, 2005 Deed at the Tavern, Kwasnik took the document back to his office and never provided Katherine with a copy of what she had signed or offered any follow up explanation about the ramifications of what she had signed.

42. Unbeknownst to Katherine at the time, the July 7, 2005 Deed was recorded with the Clerk of Camden County on July 20, 2005 at Book 7885, Page 1735.

43. Katherine never agreed to transfer the Property to CAM LLC and would never have signed the July 7, 2005 Deed had Kwasnik explained to her that the deed transferred ownership of the Property, which she held free and clear.

44. Katherine never received any benefit from the purported transfer of the Property to CAM LLC.

**Kwasnik Improperly Borrows $1,000,000 Against the Property in July and August 2005**

45. On July 25, 2005, less than a month after Kwasnik unlawfully transferred the Property from Red Eagle Corporation to CAM LLC, CAM LLC borrowed $500,000 from Investors Commercial Capital, LLC, which upon information and belief is a New Jersey limited liability company doing business at 1103 Laurel Oak Road, Suite 105, Voorhees, New Jersey ("ICC") (the "July 25, 2005 ICC Loan").

46. In conjunction with the July 25, 2005 ICC Loan, CAM LLC executed a mortgage in favor of ICC dated July 25, 2005 in the amount of $500,000 (the "July 25, 2005 ICC Mortgage"). Even though KRKB and not Kwasnik is the designated Trustee, Kwasnik signed the July 25, 2005 ICC Mortgage individually on behalf of CAM LLC as "Manager and as

7

COL 08 0036

Trustee of the Katherine W. Labricciosa Irrevocable Family Trust, u/a/d November 7, 2002, the sole Member of Chapel Avenue Management, LLC." A true and correct copy of the July 25, 2005 ICC Mortgage is attached hereto as Exhibit "D."

47.    The July 25, 2005 Mortgage was recorded in the office of the County Recording Officer of Camden County, New Jersey on August 15, 2005 at Book 7919, Page 599.

48.    Katherine did not sign the July 25, 2005 ICC Mortgage and is not referenced anywhere in that document.

49.    Kwasnik never showed the July 25, 2005 ICC Mortgage to Katherine or otherwise informed her about the existence of the July 25, 2005 ICC Loan or the July 25, 2005 ICC Mortgage.

50.    Katherine never authorized Kwasnik or CAM LLC to execute a mortgage encumbering the Property or to otherwise use the Property as security for any loan obligation to ICC or any other entity.

51.    Katherine would never have authorized Kwasnik to borrow $500,000 from ICC and execute a mortgage encumbering the Property.

52.    On July 25, 2005, the same day that Kwasnik executed the July 25, 2005 ICC Mortgage, ICC executed an Assignment of Note and Mortgage for $1.00 to The Bank, which at the time was, upon information and belief, a banking organization located at 100 Park Avenue in Woodbury, New Jersey, as security for a $3,000,000 obligation from ICC to The Bank. A true and correct copy of the July 25, 2005 ICC Mortgage Assignment is attached hereto as Exhibit "E."

8

202649_1

Case 1:12-cv-02600-RBK-AMD Document 1 Filed 04/21/12 Page 65 of 65 PageID: 138

53.   Although Katherine does not possess a copy of the promissory note relating to the July 25, 2005 ICC Loan, the July 25, 2005 Mortgage Assignment states that the interest rate on the ICC Loan is 15%.

54.   Approximately 5 weeks later, on August 31, 2005, CAM LLC borrowed an additional $500,000 from ICC (the "August 31, 2005 ICC Loan").

55.   In conjunction with the August 31, 2005 ICC Loan, CAM LLC executed an additional mortgage in favor of ICC dated August 31, 2005 in the amount of $500,000 (the "August 31, 2005 ICC Mortgage").   Although KRKB is the designated Trustee of the Trust, Kwasnik signed the August 31, 2005 ICC Mortgage individually on behalf of CAM LLC as "Manager and as Trustee of the Katherine W. Labricciosa Irrevocable Family Trust, u/a/d November 7, 2002, the sole Member of Chapel Avenue Management, LLC."   A true and correct copy of the August 31, 2005 ICC Mortgage is attached hereto as Exhibit "F."

56.   The August 31, 2005 Mortgage was recorded in the office of the County Recording Officer of Camden County, New Jersey on November 16, 2005 at Book 8005, Page 1874.

57.   Katherine did not sign the August 31, 2005 ICC Mortgage and is not referenced anywhere in that document.

58.   Kwasnik never showed Katherine the August 31, 2005 ICC Mortgage or otherwise informed her about the existence of the August 31, 2005 ICC Loan or the August 31, 2005 ICC Mortgage.

59.   Katherine never authorized Kwasnik or CAM LLC to execute a mortgage encumbering the Property or to otherwise use the Property as security for any loan obligation.

9

202649_1

COL 08 0038

Case 1:12-cv-00722-RBK-AMD Document 28 Filed 04/04/12 Page 11 of 65 PageID: 239

60. Katherine would never have authorized Kwasnik to borrow $500,000 from ICC and execute a mortgage encumbering the Property.

61. On August 31, 2005, the same day that Kwasnik executed the August 31, 2005 ICC Mortgage, ICC executed an Assignment of Note and Mortgage for $1.00 to The Bank, as security for a $3,000,000 obligation of ICC to The Bank. A true and correct copy of the August 31, 2005 ICC Mortgage Assignment is attached hereto as Exhibit "G."

62. Although Katherine does not possess a copy of the promissory note relating to the August 31, 2005 ICC Loan, the August 31, 2005 Mortgage Assignment states that the interest rate on the August 31, 2005 ICC Loan is 15%.

63. Upon information and belief, and based on a Labricciosa "Trust Analysis" Kwasnik reluctantly provided to Katherine in February 2010 upon her demand for an accounting (the "Trust Analysis"), although the ICC Loans total $1,000,000, only $815,133.82 was deposited into the Trust. Proceeds from the ICC loans in the amount of $184,866.20 are unaccounted for. A true and correct copy of the Trust Analysis is attached hereto as Exhibit "H."

64. Upon information and belief, and based on the Trust Analysis, Kwasnik directs the Trust to make monthly payments on the ICC Loans in the amount of $12,812.50.

**Kwasnik Improperly Borrows an Additional $2,510,000 Against the Property**

65. On June 6, 2006, approximately one year after borrowing $1,000,000 from ICC (only $815,133.82 of which was deposited into the Trust), CAM LLC borrowed an additional $2,510,000 from Liberty State Credit Incorporated ("LSC") (the "LSC Loan").

66. In conjunction with the LSC Loan transaction, CAM LLC executed a mortgage in favor of LSC dated June 6, 2006 in the amount of $2,510,000 (the "LSC Mortgage"). Kwasnik, again even though he is not Trustee, personally signed the LSC Mortgage on behalf of CAM

10

COL 08 0039

Case 1:10-cv-02360-RBK-AMD Document 488 Filed 04/21/12 Page 83 of 88 PageID: 5340

LLC as "Manager and as Trustee of the Katherine W. Labricciosa Irrevocable Family Trust, the sole Member of Chapel Avenue Management, L.L.C." A true and correct copy of the LSC Mortgage is attached hereto as Exhibit "I."

67.   The LSC Mortgage was recorded in the office of the County Recording Officer of Camden County, New Jersey on August 17, 2006 at Book 8301, Page 1932.

68.   Upon information and belief, LSC is owned by and/or affiliated with certain other "Liberty State" entities that are owned and/or managed by Kwasnik and/or members of Kwasnik's family.

69.   For instance, Liberty State appears to operate numerous businesses including Liberty State Financial, Liberty State Wealth Management, Liberty State Benefits, Liberty State Funding and Liberty State Insurance Services. *See* Liberty State Internet Website Printout (printed from www.libertystate.com), a true and correct copy of which is attached hereto as Exhibit "J."

70.   Liberty State's Chief Executive Officer is William M. Kwasnik who, upon information and belief, is Kwasnik's father. Additionally, Steven C. Kwasnik, who, upon and belief, is Kwasnik's brother, is a member of the company's Board of Directors. The Liberty State website also lists Kwasnik's own firm, KRKB, as a "strategic partner."

71.   Moreover, upon information and belief, Kwasnik had a direct ownership interest in Liberty State Financial at the time of the LSC Loan transaction.

72.   Katherine did not sign the LSC Mortgage and is not referenced anywhere in that document.

11

202649_1

COL 08 0040

Case 1:13-cv-02600-RBK-AMD Document Filed 04/21/14/21 Page Page 63 Page ID 5441

73.   Kwasnik never informed Katherine about the LSC Loan or the LSC Mortgage or that he had loaned money to an entity that was, upon information and belief, owned and/or managed by Kwasnik and/or his family members.

74.   Katherine never authorized Kwasnik or CAM LLC to execute a mortgage encumbering the Property or to otherwise use the Property as security for any loan obligation to LSC Inc. or any other entity.

75.   Katherine would never have authorized Kwasnik to borrow $2,510,000 from ICC and execute a mortgage encumbering the Property, especially to an entity that was, upon information and belief, owned and/or managed by members of Kwasnik's family.

76.   On June 6, 2006, the same day that Kwasnik executed the LSC Mortgage, LSC executed an Assignment of Mortgage for $2,510,000 to Barbara H. Fleisher and Michael Ginn, individuals residing at 15 Cynwyd Road, Bala Cynwyd, PC 19004.  A true and correct copy of the LSC Mortgage Assignment is attached hereto as Exhibit "K."

77.   Although Katherine does not possess a copy of the promissory note relating to the LSC Loan, the LSC Mortgage Assignment states that the interest rate on the LSC Loan is 15%.

**Unauthorized Attempt to Transfer the Liquor License to CAM LLC**

78.   On or around May 24, 2007, Timothy Buckley, the same attorney at KRKB that prepared the July 25, 2005 Deed, prepared a Bill of Sale dated May 24, 2007 purporting to transfer the Liquor License from Red Eagle Company to CAM LLC for $1.00 (the "Liquor License Bill of Sale").  A true and correct copy of the Liquor License Bill of Sale is attached hereto as Exhibit "L."

79.   Although Katherine's signature appears on the Liquor License Bill of Sale, Kwasnik never explained to her what she was signing or the purported consequence of signing

12

COL 08 0041

Case 1:10-cv-02800-RBK-AMD Document 1 Filed 04/21/14 Page 69 of 69 PageID: 542

that document. Rather, he again appeared at the Tavern and directed her to sign the document with the assurance that it was merely a legal formality.

80.   Notably, the Liquor License Bill of Sale was witnessed by William Rodio, another attorney at KRKB who, upon information and belief, accompanied Kwasnik to the Tavern to have Katherine sign the document.

81.   Katherine never agreed to transfer the Liquor License from Red Eagle Company to CAM LLC and would never have signed the Liquor License Bill of Sale had Kwasnik explained to her the contents of that document.

82.   Fortunately, because Kawsnik failed to comply with the application and approval requirements of the New Jersey Division of Alcohol Beverage Control relating to the transfer of a New Jersey liquor license, as set forth in N.J.S.A. 33:1-1, *et seq.*, the Liquor License Bill of Sale is ineffective and title to the Liquor License is still owned by Red Eagle Company.

**Unauthorized Transfer of the Red Eagle Lots to CW LLC**

83.   Upon information and belief, on or around March 18, 2004, Kwasnik, again erroneously acting as Trustee of the Trust, which Trust is the sole member of CW LLC, conveyed the Residential Lots from the Red Eagle Company to CW LLC for $1.00.

84.   Katherine never agreed to transfer the Red Eagle Lots to CW LLC and Kwasnik never advised her that he transferred the lots.

85.   Katherine never received any consideration or other benefit from the purported transfer of the Red Eagle Lots to CW LLC.

86.   Subsequent to the transfer of the Red Eagle Lots to CW LLC, Katherine, still under the mistaken belief that the lots were owned by Red Eagle Company, was approached by Vincent Cangelosi, a local builder and developer who was interested in purchasing the Red Eagle

13

COL 08 0042

Lots for $435,000 plus 2% of the post-development sale price of house constructed on the Red
Eagle Lots.

87.     Presumably because Kwasnik managed CW LLC, which by this time owned the
Red Eagle Lots (unbeknownst to Katherine), Kwasnik persuaded Katherine to let KRKB
"handle" the sale of the lots. Katherine, who still trusted Kwasnik as her attorney and as trustee,
agreed.

88.     Although all of the Red Eagle Lots have, upon information and belief, been
developed and sold, neither Red Eagle Company nor Katherine can confirm the Trust received
the proceeds from the sale of the Lots with the exception of one check for the 2% overage
payment in the approximate amount of $13,000.

89.     In addition, upon information and belief, Kwasnik, without the authorization,
consent or even knowledge of Katherine, paid from the Trust what appear to be management fees
for CW LLC in the total amount of $8,000.

**Kwasnik Failed To Pay Real Estate Taxes For The Property**

90.     Kwasnik represented to Katherine that as Trustee of the Trust (even though his
firm is the designated Trustee), he would make sure the property taxes for the Property were paid
from the Trust funds.

91.     Despite this representation, Kwasnik failed to pay the real estate taxes to the
Township of Cherry Hill from the Fourth Quarter of 2006 through present.

92.     As a result of the unpaid taxes, on June 27, 2007, Carol L. Redmond, the Cherry
Hill Township Collector of Taxes, sold the Property to Fidelity Tax LLC for $36,984.78 at a
public tax sale. A true and correct copy of the Certificate Of Sale For Unpaid Municipal Liens is
attached hereto as Exhibit "M."

14

COL 08 0043

93.     On or around September 17, 2009, Fidelity Tax LLC assigned its rights in the Tax Sale Certificates relating to the Property to FT Properties, LLC.  Upon information and belief, FT Properties, LLC instituted a foreclosure action related to the Property on or around November 2, 2009, which bears the caption: *FT Properties v. Chapel Avenue Management LLC*, et al., Superior Court of New Jersey—Camden County, Chancery Division, Docket No. F-57462-09. A true and correct copy of the assignment to FT Properties, LLC and the Lis Pendens relating to the foreclosure proceeding are attached hereto as Exhibit "N."

94.     FT Properties, LLC named CAM LLC, among others, but not including Katherine or Red Eagle Company, as a defendant in the foreclosure proceeding.  Upon information and belief, Kwasnik, on behalf of CAM LLC, was served with the complaint.

95.     Because Katherine and Red Eagle Company are not defendants to the foreclosure action, they were not served with or otherwise made aware of the action.

96.     Kwasnik did not advise Katherine that the taxes on the Property had not been paid until apparently February 2010 nor that the Property had been sold at a tax sale and that CAM LLC had been served with a foreclosure complaint.

97.     Upon information and belief, as of the date of this Complaint, the amount of the tax lien on the Property, including interest and late fees, is approximately $216,904.18.  In addition, Q4 2009 and Q1 2010 property taxes, in the approximate amount of $25,862.12, are due and owing.  The total amount of taxes currently due and owing on the Property is approximately $242,766.30.

**Kwasnik Improperly Sells And Reinvests Trust Assets Without Authorization**

98.     As stated above, the Trust originally consisted largely of securities, including stock in AT&T, Comcast, Verizon, Bell South, Qwest, etc.

15

202649_1

Case 1:10-cv-02809-RBK-AMD Document 88-1 Filed 04/21/11 Page 72 of 82 PageID: 1845

99.   Unbeknownst to Katherine, and without her authorization, Kwasnik began selling these securities in or around October 2006 without the knowledge or authorization of Katherine.

**Unauthorized Loan to Liberty State Benefits of Pennsylvania, Inc.**

100.   Kwasnik, acting as Trustee of the Trust, loaned $600,000 to Liberty State Benefits of Pennsylvania, Inc., a company which, upon information and belief, is owned and/or managed by Kwasnik and/or his family members (as set forth above in Paragraphs 68 through 71). A true and correct copy of the July 31, 2009 Liberty State Benefits Subscription Agreement is attached hereto as Exhibit "O."

101.   Although Katherine's signature appears on the Subscription Agreement, Kwasnik never explained the significance of that document or advised her about the loan to Liberty State Benefits of Pennsylvania, Inc. Rather, he, once again, presented her with documents that he said "need to be signed because of legal formalities."

102.   Upon information and belief, the Trust's loan to Liberty State Benefits yields an interest rate of 12%, which is lower than the 15% interest rate the Trust incurred with the ICC Loans.

103.   Kwasnik did not disclose to Katherine that the Trust loaned money to Liberty State Benefits and Katherine did not authorize this loan.

104.   Katherine would not have authorized the loan to Liberty State Benefits even if Kwasnik did disclose it to her.

**Unauthorized Loan to Liberty State Financial**

105.   Based on the Trust Analysis, it appears that the Trust loaned Liberty State Financial $1,392,100. However, it cannot be determined if the $600,000 set forth in Paragraph 97 is included in or in addition to the $1,392,000 loaned to Liberty State Financial.

16

COL 08 0045

106. Kwasnik did not disclose to Katherine that the Trust loaned money to Liberty State Financial and Katherine did not authorize this loan.

107. Katherine would not have authorized the loan to Liberty State Financial even if Kwasnik did disclose it to her.

### Unauthorized Loan to Oxbridge Investors Fund LLC

108. In addition, Kwasnik, upon information and belief, also loaned $488,377.66 to Oxbridge Investors Fund LLC ("Oxbridge"), which, upon information and belief, is a New Jersey limited liability company located at 1763 Route 70 East, Cherry Hill, New Jersey 08002, which is the same location as Kwasnik's firm, KRKB. A true and correct copy of the Oxbridge business entity status search is attached hereto as Exhibit "P."

109. Upon information and belief, the interest rate the Trust receives on the Oxbridge loan is 9%, which is lower than the 15% interest rate the Trust incurred with the ICC Loans.

110. Kwasnik did not disclose to Katherine that the Trust loaned money to Oxbridge and Katherine did not authorize this loan.

111. Katherine would not have authorized the loan to Oxbridge even if Kwasnik did disclose it to her.

### Kwasnik Mishandles Administration of Estate of Harriet Gordaneer

112. Katherine had a natural sister, Harriet Gordaneer ("Harriet"), who resided in Canada since the 1930s.

113. On or around April 27, 2006, Harriet died intestate and Katherine was her only living heir.

114. Katherine had initially planned to travel to Canada alone to administer Harriet's estate (the "Gordaneer Estate"). When she mentioned her plan to Kwasnik, Kwasnik implored

17

COL 08 0046

Katherine to take him with her to Canada so that he could handle the Gordaneer Estate. Katherine reluctantly agreed.

115.  In Canada, Kwasnik assisted in the administration of the Gordaneer Estate and charged legal fees for his services.

116.  Kwasnik, however, never provided Katherine, the sole beneficiary of the Gordaneer Estate, with an accounting or inventory of the estate's assets.

117.  Although the Gordaneer Estate, which consisted of assets in the approximate amount of $1,400,000, based on the Trust Analysis it appears that only $284,301.35 was deposited into the Trust by Kwasnik. Katherine did not receive any additional proceeds from the Gordaneer Estate and is unaware of the whereabouts of the remaining estate assets and proceeds.

**Kwasnik and KRKB Withdraw Excessive Legal Fees and Commissions From The Trust**

118.  In 2009, Katherine demanded that Kwasnik provide her with an accounting of the Trust.

119.  Up until this point, Kwasnik had not provided Katherine with any accounting for the Trust.

120.  According to the Trust Analysis, which Kwasnik produced in February 2010, the Trust balance as of February 2010 appears to be $526,184.25.

121.  Based on the Trust Analysis it appears that as of February 2010, Kwasnik had paid $98,315.39 from the Trust for KRKB Fees.

122.  In addition, based on the Trust Analysis, it appears that as of February 2010, Kwasnik paid $20,000 to KRKB for services as Trustee. The Trust Analysis indicates that the trustee fees were payable to KRKB.

18

202649_1

123.   In addition, it appears that as of February 2010, the Trust paid an additional $10,000 in fees for management of CW LLC.

124.   Except for an invoice relating to administration of the Gordaneer Estate, Kwasnik never provided Katherine with KRKB invoices or otherwise advised her how much she was paying for his services.  Rather, he, upon information and belief, merely paid the fees directly from the Trust without the prior authorization, consent, or even knowledge, of Katherine.

125.   Given Kwasnik's unauthorized and self-serving disposition of Trust assets, the approximately $128,000 in fees Kwasnik paid himself and/or his firm should be returned to the trust.

## Katherine Learns About The ICC and LSC Inc. Mortgages and Foreclosure Proceedings

126.   In late 2009, Katherine decided that, after managing the Tavern for almost 50 years, it was time to retire, sell the Property and enjoy the proceeds from the sale.

127.   Katherine consulted with a local real estate agent about listing the Property for sale.

128.   It was not until the real estate agent ordered a title report on the Property that Katherine learned that the Property had been transferred to CAM LLC and obtained copies of the July 25, 2005 Mortgage, the August 31, 2005 Mortgage, the LSC Mortgage and the tax foreclosure proceedings.

## COUNT ONE – BREACH OF FIDUCIARY DUTY AGAINST KWASNIK

129.   All of the previous paragraphs of this Complaint are incorporated by reference as if more fully set forth herein.

130.   As set forth above, Kwasnik breached his fiduciary duty to Plaintiffs as follows:

202649_1

COL 08 0048

 

 

i.   Misrepresenting himself as the Trustee of the Trust in order to execute
mortgages on the Property in excess of $3,000,000 and at interest rates
as high as 15% without the authorization and knowledge of Katherine,
and to her detriment as sole beneficiary of the Trust;

ii.  Causing the loss and/or devaluation of Trust assets by, among other
things, selling publicly traded securities held by the Trust and lending
the proceeds to local companies that are, upon information and belief,
owned and/or managed by Kwasnik and/or his family members;

iii. Failing to account for the assets of the Gordaneer Estate;

iv.  Failing to cause the real estate taxes on the Property to be paid and
allowing the Property to be sold at a tax sale and without Plaintiff's
knowledge;

v.   Taking excessive commissions, fees and other compensation from the
Trust; and

vi.  Failing to provide any meaningful accounting of the Trust to
Katherine.

**WHEREFORE,** Plaintiff demands judgment against Michael Kwasnik, individually, as
follows:

A.   Immediately releasing funds from the Trust in the approximate amount of
$242,766.30 in order to redeem the tax sale certificates and avoid a
sheriff's sale on the Property in the pending foreclosure action, which
bears the following caption: *FT Properties v. Chapel Avenue Management*

292649_1

COL 08 0049

*LLC,* et al., Superior Court of New Jersey—Camden County, Chancery Division, Docket No. F-57462-09;

B.   Other than the release of funds to redeem the tax sale certificates and avoid a foreclosure sale, as set forth in paragraph A above, issuing an injunction preventing any further withdrawals or payments from the Trust by Kwasnik and/or KRKB without Court approval;

C.   Removal of Kwasnik's firm as the purported Trustee of the Trust and denying any further fees, commissions or compensation to Kwasnik and/or KRKB;

D.   Ordering Kwasnik to provide a detailed accounting of his administration of the Trust from inception through present, including a detailed accounting of all fees he paid from the Trust for legal services, trustee fees, management fees and any other fees or payments for services provided by Kwasnik, KRKB or any other entity controlled by Kwasnik;

E.   Requiring Kwasnik to preserve and immediately produce all documents or other information in his possession or control consisting of or relating in any way to the Trust, the Property, the Tavern, the Red Eagle Lots, CAM LLC, CW LLC, ICC, the July 7, 2005 Deed, the July 25, 2005 ICC Loan, the July 25, 2005 ICC Mortgage, the August 31, 2005 ICC Loan, the August 31, 2005 ICC Mortgage, the LSC Loan, the LSC Mortgage, the Liquor License Bill of Sale, the Labricciosa Estate, the Gordaneer Estate, Oxbridge and any other related matters;

21

COL 08 0050

Case 1:10-cv-02600-RBK-AMD Document 82 Filed 04/21/17 Page 65 of 65 PageID: 451

F.   Terminating the trust or, alternatively, appointing a substitute Trustee of the Trust, to serve without bond;

G.   Compensatory damages, including disgorgement of legal fees and management fees that Kwasnik paid from the Trust;

H.   Consequential damages;

I.   Punitive damages;

J.   Interest;

K.   Attorney's fees and costs of suit; and

L.   Such other relief that the Court deems just, equitable and reasonably required to afford Plaintiff complete relief for the claims set forth in the Complaint.

## COUNT TWO – CONVERSION AGAINST KWASNIK

131.   All of the previous paragraphs of this Complaint are incorporated by reference as if more fully set forth herein.

132.   By virtue of Kwasnik's knowing, willful and improper use and disposition of Trust funds for his own personal benefit, and for the benefit of his family members, Defendant wrongfully converted monies to the detriment of Plaintiff.

133.   By virtue of Defendant's conversion of Trust funds, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff demands judgment against Michael Kwasnik, individually, as follows:

A.   For compensatory damages;

B.   For consequential damages;

C.   For punitive damages;

22

COL 08 0051

Case 1:13-cv-02600-RBK-AMD   Document 1-8   Filed 04/21/14   Page 49 of 85 PageID: 852

D.   For interest;

E.   For attorney's fees and costs of suit; and

F.   For such other relief that the Court deems just, equitable and reasonably required to afford Plaintiff complete relief for the claims set forth in the Complaint.

## COUNT THREE – NEGLIGENCE AGAINST KWASNIK

134.   All of the previous paragraphs of this Complaint are incorporated by reference as if more fully set forth herein.

135.   As set forth above, Kwasnik was negligent in many areas concerning his handling and administration of the Trust, including, but not limited to:

    i.   Erroneously advising Katherine that formation of the Trust will result in tax savings, asset protection and other financial benefits for Katherine;

    ii.   Causing KRKB to be the Trustee of the Trust despite New Jersey law precluding Professional Corporations from serving as trustees;

    iii.   Executing mortgages on the Property in excess of $3,000,000 and at interest rates as high as 15%;

    iv.   Failing to advise Plaintiff of the consequences of executing mortgages on the Property in excess of $3,000,000;

    v.   Failing to account for the assets of the Gordaneer Estate;

    vi.   Causing the loss and/or devaluation of Trust assets by, among other things, selling securities and loaning the proceeds and other Trust

202649_1

COL 08 0052

Case 1:13-cv-02300-RBK-AMD-DenDocument Filed 04/21/04/2 Page Page 65 Page Page 53

funds to local companies that are, upon information and belief, owned and/or managed by Kwasnik and/or his family members;

vii. Failing to advise Plaintiff of the consequences of selling the Trust's securities and lending Trust funds to local companies that are, upon information and belief, owned and/or managed by Kwasnik and/or his family members;

viii. Failing to cause to be paid the real estate taxes on the Property and allowing the Property to be sold at a tax sale without Katherine's knowledge; and

ix. Failing to advise Plaintiff that the real estate taxes on the Property were not paid and that foreclosure proceedings have been instituted.

WHEREFORE, Plaintiff demands judgment against Michael Kwasnik, individually, as follows:

G.     For compensatory damages, including disgorgement of legal fees and management fees that Kwasnik paid from the Trust;

H.     For consequential damages;

I.     For interest;

J.     For attorney's fees and costs of suit; and

K.     For such other relief that the Court deems just, equitable and reasonably required to afford Plaintiff complete relief for the claims set forth in the Complaint.

24

COL 08 0053

Case 1:13-cv-02800-RBK-AMD   Document   Filed 04/01/14   Page 65 of 65 PageID: 754

### COUNT FOUR – NEGLIGENCE AGAINST KRKB

136.   All of the previous paragraphs of this Complaint are incorporated by reference as if more fully set forth herein.

137.   KRKB owed Plaintiff a reasonable duty of care with respect to the legal services its attorneys provided to her.

138.   As set forth above, KRKB was negligent in many areas concerning its representation of Katherine and handling and administration of the Labricciosa Estate and Trust, including, but not limited to:

    i.   Erroneously advising Katherine that formation of the Trust will result in tax savings, asset protection and other financial benefits for Katherine;

    ii.   Causing KRKB to be designated as the Trustee of the Trust despite New Jersey law precluding Professional Corporations from serving as trustees;

    iii.   Assisting in the execution of mortgages on the Property in excess of $3,000,000 bearing interest rates as high as 15% without the authorization and/or knowledge of Plaintiff;

    iv.   Assisting in causing the loss and/or devaluation of Trust assets;

    v.   Failing to account for the assets of the Gordaneer Estate, and

    vi.   Failing to provide Plaintiff with invoices for legal services.

139.   KRKB breached its duty of care and proximately caused Plaintiff to suffer damages.

**WHEREFORE**, Plaintiff demands judgment against KRKB as follows:

282649_1

COL 08  0054

Case: 1:13-cv-02030-RBK-AMD  Document Filed 04/04/21  Page 62 of 63 PageID: 855

A.  For compensatory damages, including disgorgement of legal fees and management fees paid to KRKB from the Trust;

B.  For consequential damages;

C.  For interest;

D.  For attorney's fees and costs of suit; and

E.  For such other relief that the Court deems just, equitable and reasonably required to afford Plaintiff complete relief for the claims set forth in the Complaint.

## COUNT FIVE – WASTE AGAINST KWASNIK

140.  All of the previous paragraphs of this Complaint are incorporated by reference as if more fully set forth herein.

141.  As set forth above, Kwasnik was negligent in many areas concerning his administration of the Trust, including

i.  Executing mortgages on the Property in excess of $3,000,000 and at interest rates as high as 15%;

ii.  Causing the loss and/or devaluation of Trust assets by, among other things, selling securities and lending the proceeds and other Trust funds to local companies that are, upon information and belief, owned and/or managed by Kwasnik and/or his family members;

iii.  Failing to account for the assets of the Gordaneer Estate, and

iv.  Failing to cause to be paid the real estate taxes on the Property and allowing the Property to be sold at a tax sale without Katherine's knowledge.

26

202649_1

Case 1:13-cv-02010-RBK-AMD   Document   Filed 04/21/14   Page 53 of 53 PageID: 956

WHEREFORE, Plaintiff demands judgment against Michael Kwasnik, individually, as follows:

A.   For compensatory damages, including disgorgement of legal fees and management fees that Kwasnik deducted from the Trust;

B.   For consequential damages;

C.   For interest;

D.   For attorney's fees and costs of suit; and

E.   For such other relief that the Court deems just, equitable and reasonably required to afford Plaintiff complete relief for the claims set forth in the Complaint.

**COUNT SIX – CLAIMS AGAINST JOHN DOES 1-99 AND ABC COMPANIES 1-99**

142.   All of the previous paragraphs of this Complaint are incorporated by reference as if more fully set forth herein.

143.   The plaintiffs allege that an insufficient amount of time has passed within which to determine the actual identity of any other individual or business entities which may be responsible in whole or in part for Plaintiff's damages. For the purposes of this Complaint, said individuals and business entities have been nominated as John Does 1-99 and ABC Companies 1-99. Plaintiff reserves the right to amend this Complaint relative to these other defendants when, and if, the identity of said individuals and/or business entities become known.

WHEREFORE, Plaintiff demands judgment against John Does 1-99 and ABC Companies 1-99 as follows:

F.   For compensatory damages;

G.   For consequential damages;

27

COL 08 0056

H.   For interest;

I.   For attorney's fees and costs of suit; and

J.   For such other relief that the Court deems just, equitable and reasonably required to afford Plaintiff complete relief for the claims set forth in the Complaint.

DILWORTH PAXSON LLP
Attorneys for Plaintiff

By:_____
FRANK V. TEDESCO
ANDREW J. PODOLSKI

Dated: March 3, 2010

202649_1

COL 08 0057

Case 1:10-cv-02600-RBK-AMD  Document  Filed 04/21/14/21  Page Page 65 of 65 PageID: 158

## DESIGNATION OF TRIAL COUNSEL

PLEASE TAKE NOTICE that Frank V. Tedesco, Esquire, is hereby designated as trial

counsel for Plaintiff Katherine W. Labricciosa in the above matter.

DILWORTH PAXSON LLP
Attorneys for Plaintiff

By: _____
        FRANK V. TEDESCO
        ANDREW J. PODOLSKI

Dated: March ___, 2010

202649_1

COL 08 0058

Case 1:10-cv-02800-RBK-AMD Document Filed 04/21/04/21 Page Page 66 PageIPageID:259

## VERIFICATION OF COMPLAINT

Katherine W. Labricciosa, of full age, being duly sworn deposes and says:

1.   I am the Plaintiff named in the foregoing Complaint.

2.   I have read the Complaint and the information contained in it is true and correct
     and is based on my personal knowledge.

3.   The foregoing statements made by me are true.  I am aware that if any of the
     foregoing statements made by me are willfully false, I am subject to punishment.


KATHERINE W. LABRICCIOSA

Date: March 3 , 2010

30

202649_1

COL 08 0059

Case 1:10-cv-02600-RBK-AMD   Document 1-1   Filed 04/21/10   Page 63 of 63 PageID: 360

### RULE 4:5-1 CERTIFICATION

The undersigned hereby certifies, pursuant to Rule 4:5-1, that the matter in controversy is not the subject of any other pending or contemplated action or arbitration proceeding. Plaintiff does, however, anticipate adding certain additional individuals and/or entities, the identity of whom are not yet known, which individuals and/or entities have, for the time being, been designated as John Does 1-99 and ABC Companies 1-99.

DILWORTH PAXSON LLP
Attorneys for Plaintiff

By: _____
FRANK V. TEDESCO
ANDREW J. PODOLSKI

Dated: March 3, 2010

31

COL 08 0060