**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

COLONY INSURANCE COMPANY,

        Plaintiff,

    v.

KWASNIK, KANOWITZ &
ASSOCIATES, P.C. et. al,
        Defendants.

CIVIL NO. 1:12-cv-00722
(NLH/AMD)

**OPINION**

---

Appearances:

ROBERT F. WALSH
WHITE AND WILLIAMS LLP
1650 MARKET STREET
ONE LIBERTY PLACE
SUITE 1800
PHILADELPHIA, PA 19103

MICHAEL E. DI FEBBO
WHITE AND WILLIAMS LLP
1650 MARKET STREET
ONE LIBERTY PLACE
SUITE 1800
PHILADELPHIA, PA 19103

*Attorneys for plaintiff Colony Insurance Company*

MICHAEL W. KWASNIK
18071 BISCAYNE BLVD.
APT. 1501
AVENTURA, FL 33160

*Pro se*

**HILLMAN, District Judge**

Before the Court is Plaintiff's Combined Motion for Summary Judgment and for Default Judgment. For the reasons set forth below, the Motion will be granted in part and denied in part.

## Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

## Background

Plaintiff Colony Insurance Company ("Colony") initiated this action to rescind an insurance policy and recover damages as a result of false statements made on an application for professional liability insurance. In February 2010, Defendant Michael Kwasnik ("Kwasnik") signed and submitted an application for professional liability insurance on behalf of his law firm, Kwasnik, Kanowitz, and Associates ("KKA"). (Decl. of Robert F. Walsh in Supp. Of Pl.'s Mot. For Summ. J. / Mot. To Enter Default J. [Doc. No. 80-3 to 12] (hereinafter Walsh Decl.) Ex. C, at 5.) The application contained three questions relating to past and possible future claims against the applicants for

2

malpractice or ethical violations.  (Id.)  In particular, question thirteen of the application asked:

> 13(a): "[I]n the last seven (7) years, has any professional liability claim or suit ever been made against the Firm or any predecessor firm or any current or former member of the Firm or predecessor firm?"
>
> 13(b): "[D]o you know of any circumstances, acts, errors or omissions that could result in a Professional Liability claim?"
>
> 13(c): "[H]as an attorney for who [*sic*] coverage is sought ever been refused admission to practice . . . by any court, administrative agency or regulatory body or been [the] subject of a disciplinary complaint made to any of the aforementioned entities?"

(Id.)  Kwasnik answered "no" to all three questions.  (Id.) After reviewing the application and other supplemental materials, Colony issued KKA a lawyer's professional liability insurance policy ("Policy") that covered the firm and its comprising attorneys: Kwasnik, Howard Kanowitz ("Kanowitz"), and Robert Keltos ("Keltos").  (Walsh Decl. Ex. B.)

Colony commenced this action alleging Kwasnik and KKA committed fraud by giving false answers to questions 13(a)

3

through (c).[1]  (Pl.'s Compl. [Doc. No. 1].)  For relief, Colony seeks to rescind the Policy and recover damages under the New Jersey Insurance Fraud Prevention Act ("IFPA"), N.J.S.A. §§ 17:33a-1 to -34.  (Id. at wherefore clause.)  Kwasnik filed an answer on behalf of himself and KKA.[2]  (Def.'s Answer [Doc. No. 9].)  However, the Court struck Kwasnik's answer and entered a default against him for violating an order compelling his deposition.  (Order [Doc. No. 77] Sept. 12, 2013.)  Colony now moves for a default judgment against Kwasnik and for summary judgment against KKA.  (Pl.'s Mot. For Summ. J. / Default J. [Doc. No. 80].)  Neither Kwasnik nor KKA responded to the motion.

## Discussion

**I.   Choice of Law**

In diversity cases, federal courts apply the forum state's choice of law rules to determine which state's substantive laws are controlling.  Maniscalo v. Brother Int'l (USA) Corp., 709 F.3d 202, 206 (3d Cir. 2013)(citing Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487 (1941)).  However, defendants must raise choice of law issues or they are waived.  Neely v. Club

---

[1] Colony also named Kanowitz and Keltos as defendants, but has since settled with them.  However, Kanowitz and Keltos each filed crossclaims against Kwasnik which are still pending.
[2] Kwasnik also filed a crossclaim against Kanowitz which is still pending.

4

Med Mgmt. Servs., Inc., 63 F.3d 166, 180 (3d Cir. 1995) (*en banc*). At no point in the present case did any party question the applicability of New Jersey law, which is the basis of Colony's claims. Therefore, the Court will apply New Jersey substantive law.[3]

## II. Motion for Summary Judgment

Colony has asked for summary judgment against KKA on both its claim for rescission and its claim for damages under the IFPA.

### A. Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect

---

[3] New Jersey's choice of law rules are in accord with this result. See DeMarco v. Stoddard, 84 A.3d 965, 972 (N.J. Super. Ct. App. Div. 2014) (stating that a trial court has discretion whether to permit parties to raise choice of law issues not raised early in the case); see also Chalef v. Ryerson, 648 A.2d 1139, 1142 (N.J. Super. Ct. App. Div. 1994) (declining to consider choice of law issue on appeal when it was not properly presented before the trial court).

5

the outcome of the suit. Id. Judgment is appropriate as a matter of law if there can only be one reasonable verdict under the governing law. Id. at 250.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met its burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. at 324. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party cannot rely upon mere allegations, general denials, or vague statements to establish a genuine issue of material fact. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

When deciding a motion for summary judgment, courts look to the pleadings, depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, and interrogatory answers. Celotex, 477 U.S. at 330; Fed. R. Civ. P. 56(a). However, "a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Additionally, Local Civil Rule 56.1 requires movants for summary judgment to submit a statement of material facts for which there is no genuine issue. L. Civ. R. 56.1(a). The respondent must then submit a responsive statement, along with its opposition papers, identifying the material facts in dispute. Id. Any material fact not disputed by respondent in this manner must be deemed admitted for purposes of deciding the motion. Id. However, only facts that are properly supported by the record will be deemed admitted. Id.; see also Yocham v. Novartis Pharmals. Corp, 736 F. Supp. 2d 875, 879 (D.N.J. 2010). Because KKA did not responded to Colony's motion, all of the properly supported facts in Colony's statement of uncontested material facts will be treated as admitted.

**A. Rescission for Equitable Fraud**

Equitable fraud is a basis for rescinding a contract. First Am. Title Ins. Co. v. Lawson, 827 A.2d 230, 237 (N.J. 2003) (citing Jewish Ctr. of Sussex Cnty. v. Whale, 432 A.2d 521 (N.J. 1981)). A rescinded contract is void *ab initio*, which means "it is considered 'null from the beginning' and treated as if it does not exist for any purpose." Id. at 237 (quoting Black's Law Dictionary 1568 (7th ed. 1999)).

Equitable fraud generally has three elements: (1) material misrepresentation of fact, (2) intent that the other party rely on it, and (3) detrimental reliance by the other party. Id. at

7

237 (quoting Liebling v. Garden State Indem., 767 A.2d 515 (N.J. Super. Ct. App. Div. 2001)). Unlike legal fraud, a person need not know his statement is false to be guilty of equitable fraud. Whale, 432 A.2d at 524 (citing Equitable Life Assurance Soc'y v. New Horizons, Inc., 28 N.J. 307, 314 (1958)).

In the context of insurance contracts, the equivalent of equitable fraud exists when the insured: (1) makes a false statement that is (2) "material to the particular risk assumed by the insurer," and (3) the insurer actually and reasonably relies on the statement in issuing the policy. Lawson, 827 A.2d at 237 (quoting Allstate Ins. Co. v. Meloni, 236 A.2d 402 (N.J. Super. Ct. App. Div. 1967)). Knowledge of the statement's falsity is not a prerequisite for rescission of an insurance policy unless the applicant made the statement in response to a subjective question - *e.g.* a question asking what the applicant believes or is aware of. Lawson, 827 A.2d at 237 (citing Ledley v. William Penn Life Ins. Co., 651 A.2d 92 (N.J.1995)).

A false statement on an insurance application is material if, at the time it was made, "'a reasonable insurer would have considered the misrepresented fact relevant to its concerns and important in determining its course of action.'" Palisades Safety & Ins. Ass'n v. Bastien, 814 A.2d 619, 622 (N.J. 2003) (quoting Longobardi v. Chubbs Ins. Co., 582 A.2d 1257 (N.J. 1990)). Furthermore, insurers are generally entitled to

8

reasonably rely on representations made in insurance applications.  Cf. John Hancock Mut. Life Ins. Co. v. Cronin, 139 N.J. Eq. 392, 398 (N.J. 1947) (insurer's right to rely on representations was not diminished by fact that insurer did independent investigation).

    The uncontested facts show that Kwasnik provided false answers to all three parts of question 13 on KKA's application.  First, Kwasnik answered "no" to question 13(a) which asked: "[I]n the last seven (7) years, has any professional liability claim or suit ever been made against the Firm or any predecessor firm or any current or former member of the Firm or predecessor firm?"  (Walsh Decl. Ex. C, at 5.)  In fact, at least four professional liability claims were filed against KKA, its attorneys, or its predecessor firm during the relevant time period.

    In 2010, Kwasnik and the predecessor to KKA – Kwasnik, Rodio, Kantowitz, & Buckley, P.C. ("Predecessor Firm") – were sued by a client for breach of fiduciary duty, conversion, negligence, and waste.  (Walsh Decl. Ex. F, ¶¶ 129-141.)  The client alleged, among other things, that Kwasnik formed a trust for the client, named his firm as trustee, and then

misappropriated and used the trust assets for his personal gain.[4] (Id. ¶¶ 7-128.)

Another client filed a second lawsuit in 2010 against Kwasnik, Kanowitz, and the Predecessor Firm. (Walsh Decl. Ex. I.) That case had essentially the same facts as the first, except plaintiff accused defendants of mismanaging the trust assets by commingling funds and self-dealing. (Id. ¶¶ 35-48.)

Also in 2010 Kwasnik and the Predecessor Firm were sued for fraud, breach of fiduciary duty, and violations of securities laws. (Walsh Decl. Ex. H.) In that case, plaintiffs alleged they relied on Kwasnik's status as an attorney when he and others made false representations to convince plaintiffs to surrender an annuity and invest the money with a financial institution of which Kwasnik was also ostensibly the "Founding Chairman." (Id. ¶¶ 1-14.) The complaint further alleged Kwasnik and the other defendants failed to inform the plaintiffs that they would forfeit a death benefit valued at $234,550.24 by surrendering the annuity. (Id.)

---

[4] Kwasnik's state of mind is not at issue with respect to question 13(a) since it was not a subjective question. However, if there could be any doubt as to whether this claim constituted a professional liability claim in Kwasnik's mind, those doubts would be resolved by the fact that the firm tendered the claim to its malpractice insurer for coverage. (Walsh Decl. Ex. O, 123-25.) Furthermore, when the insurer denied the claim, Kwasnik and the Predecessor Firm filed an action in state court seeking a declaration that the claim was covered under their professional liability policy. (Id.)

Finally, Kwasnik and the predecessor firm were named as third-party defendants in a 2009 malpractice action in which the third-party plaintiffs claimed they were being sued as a result of following Kwasnik's legal advice. (Walsh Decl. Ex. J.) Thus, Kwasnik's answer to question 13(a) was false because there were several professional liability suits filed against the applicants in the relevant time period.

The second question Kwasnik answered falsely was question 13(b) which asked: "[D]o you know of any circumstances, acts, errors or omissions that could result in a Professional Liability claim?" (Walsh Decl. Ex. C, at 5.) Kwasnik answered "no." (Id.) However, in January 2011 Kwasnik exchanged several letters with an attorney who represented one of Kwasnik's clients. (Walsh Decl. Ex. K.) One of the letters explicitly accused Kwasnik of self-dealing and mishandling the funds in his client's trust and threatened litigation. (Id. at 5-6.) In response, Kwasnik wrote: "[y]ou have threatened litigation against me . . . I have contacted Matthew Wolf, Esquire in preparation for said action and he is being copied on this letter." (Id. at 4.) The former client eventually filed suit, but not until after KKA submitted its application. (Walsh Decl. Ex. Z.) In light of these facts, particularly Kwasnik's own statement, a reasonable jury could only conclude Kwasnik knew of

circumstances that could result in a professional liability claim when he completed the application in February 2011.

The third question Kwasnik answered falsely was question 13(c) which asked: "[H]as an attorney for who [*sic*] coverage is sought ever been refused admission to practice . . . by any court, administrative agency or regulatory body or been [the] subject of a disciplinary complaint made to any of the aforementioned entities?" (Walsh Decl. Ex. C, at 5.)  Again, Kwasnik answered "no." (Id.)  In fact, the New Jersey Office of Attorney Ethics filed a disciplinary complaint against Kwasnik in 2008 with the Supreme Court of New Jersey's Ethics Committee. (Walsh Decl. Ex. L.)  The complaint included several counts for knowing misappropriation of trust funds and various conflicts of interest. (Id.)  In light of the foregoing undisputed facts, a reasonable jury could only conclude that Kwasnik made false statements on KKA's application for professional liability insurance.

The false statements on KKA's application were also material to the risk assumed by Colony.  As a matter of common sense, the questions concerned exactly the type of claims for which KKA sought coverage.  Moreover, Colony submitted with its motion a declaration by Elana Lovitch ("Lovitch"), the underwriter who reviewed KKA's application and made the decision to offer KKA a policy. (Decl. of Elana Lovitch in Supp. Of

12

Pl.'s Mot. For Summ. J. / Mot. To Enter Default J. [Doc. No. 80-1] (hereinafter Lovitch Decl.))  In her declaration, Lovitch stated that questions 13(a), (b), and (c) are "essential" to the decision process because the answers "may reflect on the insured's professional competence and ethical standards, which in turn may indicate the potential for future claims."  (Id. ¶¶ 6, 10-11.)  She further stated:

> "[If KKA had answered the questions truthfully,] I am certain that I would have rejected the Application . . . . [T]he claims indicated a pattern of alleged malpractice and misconduct by the firm, particularly attorney Michael Kwasnik, which made KKA an unacceptable professional liability insurance risk . . . because of the obvious risk that additional such claims would be asserted in the future."

(Id. ¶ 14.)  Thus, Lovitch's uncontested declaration establishes the materiality of KKA's false statements because they went to the very heart of the risk assessment.

Colony's reliance is established by the fact that Lovitch would not have offered KKA a policy if not for the false statements.  Furthermore, that reliance was reasonable because Colony was entitled to rely on KKA's statements and nothing in the record suggests that Colony had reason to know the statements were false.

Given the uncontested facts discussed above, a reasonable jury could only conclude that Kwasnik made false statements on KKA's insurance application; that the false statements were

13

material to the risk assumed by Colony; and that Colony actually and reasonably relied on those statements. Therefore, Colony is entitled to summary judgment on its claim to rescind the policy as to KKA.[5]

### B. Damages under the IFPA

Colony has also moved for summary judgment on its claim for damages under the IFPA. The purpose of the IFPA is to "confront aggressively the problem of insurance fraud in New Jersey," and it must be construed "liberally to accomplish the Legislature's broad remedial goals." N.J. STAT. ANN. § 17:33A-2; Liberty Mut. Ins. Co. v. Land, 892 A.2d 1240, 1246 (N.J. 2006).

It is a violation of the IFPA to knowingly make a false or misleading statement concerning any fact that is "material to an insurance application or contract." N.J. STAT. ANN. § 17:33A-4(a)(4)(a). Furthermore, violation of the IFPA entitles the defrauded insurer to compensatory damages, including "reasonable investigation expenses, costs of suit and attorneys fees." N.J. STAT. ANN. § 17:33A-7(a).

The uncontested facts, discussed supra, show that Kwasnik made several false statements on KKA's application regarding past and possible future claims for malpractice and ethical

---

[5] See also, Lawson, 827 A.2d at 240 (holding that rescission is appropriate as to the firm as an entity when the person responsible for the application is involved with the fraud).

14

violations.  Given the evidence of Kwasnik's personal participation in many of the relevant events, a reasonable jury could only conclude that he made the false statements knowingly. Finally, those statements were unquestionably material to the application given their importance to the underwriter's decision to offer KKA a policy.

Accordingly, Colony is also entitled to summary judgment against KKA for violating the IFPA.

### III. Motion for Default Judgment

Colony has moved for a default judgment against Kwasnik on its claims for rescission and violation of the IFPA.

#### A. Standard for Default Judgment

Pursuant to Rule 55, obtaining a default judgment is a two-step process.  First, when a defendant has failed to plead or otherwise respond, a plaintiff may request an entry of default by the Clerk of the Court.  See Fed. R. Civ. P. 55(a).  Second, after the Clerk has entered the party's default, a plaintiff may then obtain a default judgment by either: (1) asking the Clerk to enter judgment, if the judgment is a sum certain, or (2) by applying to the court.  See Fed. R. Civ. P. 55(b).  In the present case, the Court ordered the Clerk to enter default against Kwasnik as a sanction for violating its order compelling

his deposition,[6] and now the Court must determine if Colony is entitled to a default judgment. (Order [Doc. No. 77] Sept. 12, 2013.)

Courts in the Third Circuit consider three factors when deciding whether to grant a default judgment[7]: (1) whether plaintiff would suffer prejudice if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's default was due to culpable conduct. Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000) (citing United States v. $55,518 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984)); see also Hill v. Williamsport Police Dep't, 69 F. App'x 49 (3d Cir. 2003).

In the context of a default judgment, "prejudice" does not mean irreparable harm. Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003). Rather, prejudice exists where the defendant's actions "impede[] a party's ability to prepare

---

[6] Although the Court entered Kwasnik's default under Rule 55(a) instead of Rule 37, the Third Circuit has explicitly stated in dicta that Rule 55(a) is a proper tool with which a court can sanction a party who fails to comply with its order. Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 918 (3d Cir. 1992) (citing Eagle Assocs. v. Bank of Montreal, 926 F.2d 1305, 1310 (2d Cir. 1991)).

[7] These three factors are a subset of the six factors identified in Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863 (3d Cir. 1984). See Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 919 (3d Cir. 1992) (noting that the court applies "some or all of the six-part [Poulis] test . . . in reviewing sanction orders that deprive a party of the right to proceed with or defend against a claim.")

16

effectively a full and complete trial strategy." Id.  A defense is litigable if the "allegations of defendant's answer, if established on trial, would constitute a complete defense to the action."  See $55,518 in U.S. Currency, 728 F.2d at 195. "[C]ulpable conduct means actions taken willfully or in bad faith."  Gross v. Stereo Component Systems, Inc., 700 F.2d 120, 123-24 (3d Cir. 1983) (citing Feliciano v. Reliant Tooling Co., Ltd., 691 F.2d 653, 657 (3d Cir. 1982)).

**B. Colony is entitled to a default judgment**

Without a default judgment, Colony would suffer prejudice because it would be forced to proceed on its claims without deposing Kwasnik.  Given Kwasnik's key role in the case, Colony would undoubtedly be hindered in its ability to prepare a full and effective trial strategy.

Furthermore, Kwasnik does not have a litigable defense. The Court struck his answer as a sanction for failing to comply with a discovery order.  (Order [Doc. No. 77] Sept. 12, 2013.)  As a result, Kwasnik is effectively in the same position as if he never answered Colony's complaint, and therefore he is deemed to have admitted every well-pleaded allegation in the Complaint. See United States for the use of 'Automatic' Sprinkler Corp. v. Merritt-Chapman & Scott Corp., 305 F.2d 121, 123 (3d Cir. 1962); Fed. R. Civ. P. 8(b)(6).

17

Finally, Kwasnik is culpable for his default. The Court entered Kwasnik's default as a sanction for failing to comply with its order compelling his deposition. (Order [Doc. No. 77] Sept. 12, 2013.) In issuing the sanctions, the Court adopted Magistrate Judge Donio's report and recommendation which found that Kwasnik prevented Colony from deposing him through a willful and bad-faith pattern of avoidance in violation of a court order. (Id.) Thus, Kwasnik's default was a direct result of his culpable behavior.

Colony's motion for a default judgment must be granted because all of the Chamberlain factors are present.[8] Colony would suffer prejudice without a default judgment; Kwasnik does not have a litigable defense; and Kwasnik is culpable for his default.

## IV. Damages

Pursuant to Section 17:33A-7 of the IFPA, Colony is entitled to compensatory damages, including "reasonable investigation expenses, costs of suit and attorneys fees." N.J. STAT. ANN. § 17:33a-2(a). Although Colony submitted a summary of

---

[8] Although Kwasnik was acting on behalf of a professional corporation when he submitted the application, he is still liable for damages under the IFPA. According to New Jersey's tort-participation theory, corporate officers are liable for torts and statutory violations in which they personally participate. See Allen v. V and A Bros., Inc., 26 A.3d 430, 443 (N.J. 2011) (citing Saltiel v. GSI Consultants, Inc., 788 A.2d 268 (N.J. 2002)).

the fees and expenses it seeks to recover, the Court does not have enough information to assign damages. Therefore, Colony's request for damages will be denied without prejudice, and Colony will be granted leave to file a motion pursuant to Rule 54(d). With that motion Colony should provide separate analyses that explain how the fees and expenses should be apportioned between KKA and Kwasnik. Furthermore, Colony should attach detailed billing records that specify who performed each task; whether that person was a partner associate, or paralegal; the time spent; and the rate charged.

### V.   Remaining Claims

In Count III of its Complaint Colony asked for a declaration as to the parties' rights and obligations with respect to specific pending actions, but only if the Court declined to rescind the Policy in full. Since the Court will grant the instant motion, thereby rescinding the policy as to all remaining defendants, Count III of Colony's Complaint will be dismissed as moot.

The only remaining claims in this case are Kwasnik's crossclaim against Kanowitz [Doc. No. 9], Kanowitz's crossclaim against Kwasnik [Doc. No. 6], and Keltos' crossclaim against Kwasnik [Doc. No. 11]. None of the parties have made any effort to pursue their crossclaims since filing them. Accordingly, the Court will order Kwasnik, Kanowitz, and Keltos to show cause as

19

to why their crossclaims should not be dismissed, in accordance with Local Civil Rule 41.1(a), for lack of prosecution.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Combined Motion for Summary Judgment and for Default Judgment shall be granted in part and denied in part.

```
                              _s/ Noel L. Hillman_____
                              NOEL L. HILLMAN, U.S.D.J.
```

At Camden, New Jersey